On March 17, 1943, Mrs. Sarah Towles Reed, a permanent teacher of Fortier High School, in New Orleans, was tried and found guilty by the Orleans Parish School Board on charges of wilful neglect of duty in that she failed and refused to fill out a certain questionnaire which had been sent by the School Board to the teachers of *Page 896 
New Orleans pursuant to a resolution of the Board, dated January 8, 1943. As a result of this finding, the Board confirmed a prior suspension of Mrs. Reed from duty without pay from February 24, 1943, the date upon which the charges against her were preferred, to March 18, 1943, and reinstated her as of the latter date. Claiming that the charges made against her and the subsequent proceedings before the Orleans Parish School Board were illegal for the reason that the Board was without authority to require her to execute a questionnaire concerning her activities after school hours, Mrs. Reed brought the instant suit seeking to have the action of the School Board rescinded and annulled and that it be ordered to pay her the full sum of $200.52, representing her salary which was allegedly illegally withheld by it from February 24th to March 17th 1943 inclusive.
The defense of the School Board is that the action taken by it was legal and in conformity with the provisions of Act No. 79 of 1936, which amended and reenacted Section 66 of Act No. 100 of 1922, generally referred to as the "Teachers' Tenure Law"; that it had the authority and right, under Act No. 100 of 1922, to pass the resolution requiring school teachers of New Orleans to answer a questionnaire concerning the time which they were devoting after school hours to War work; that plaintiff wilfully refused to supply the information requested by the questionnaire and that, as a result thereof and after a public hearing, she was found guilty and suspended without pay for the time as alleged by her in her petition. It further averred that plaintiff's demeanor toward it and its members has long been, and still is, hostile and recalcitrant and, in support of this charge, it set forth in detail various offenses allegedly committed by plaintiff in the past.
After a trial on the foregoing issues, the judge of the District Court rejected plaintiff's demand. She has appealed.
Although the record in the case is quite voluminous, the issue presented for determination is a most narrow one. We say this because the vast preponderance of evidence submitted at the trial below exhibits that plaintiff not only neglected to supply the information sought to be obtained through the medium of the questionnaire which was submitted to her but that she actively and steadfastly refused to do so on the ground that the Board did not have the authority to inquire into her activities after school hours. The District judge so found and we fully concur in his ruling.
Thus, the question to be decided is whether the School Board had the right to require that the teachers of the New Orleans Public School System give it the information it sought to obtain by means of the questionnaire. In approaching a solution of this problem, it is important to ascertain at the outset whether the resolution of the Board of January 8, 1943, which provided for the issuance of the questionnaire, was founded on just cause. The circumstances surrounding the adoption of the resolution are shown by the record to be, in substance, as follows:
The United States Department of Education in Washington, in an effort to better prepare the youth of the land for the rigors of the present global War, had requested that all public school systems throughout the country emphasize the teaching of mathematics and science to a higher degree than ever before and also that courses in physical education be intensified. In order to comply with this request, the State Board of Education found it necessary to require that science be taught in the high schools of the State five times a week instead of three and that, inasmuch as the War Policy Commission of the Department of Education in Washington had suggested that physical education be increased from five hours to ten hours per week as outlined in the "Victory Corps" curriculum, the teaching of physical culture should be augmented. Taking cognizance of the recommendations of the Federal Government as approved by the State Board of Education, it was proposed by the Orleans Parish School Board, at its regular meeting on January 8, 1943, that the school hours in New Orleans be lengthened in order to accomplish this intensified program. Plaintiff, who is a leader of one of the teachers' associations in New Orleans, appeared at this meeting of the School Board and, with other teachers, opposed the proposal to lengthen the school hours on the ground that the increase of hours would interfere with War work in which many of the teachers were engaged. Upon stating this objection, plaintiff was asked by one of the members of the School Board whether she had any idea as to the number of teachers then engaged in War work, either voluntary or remunerative. To this query, plaintiff replied that she did not *Page 897 
have information as to the number of persons so engaged nor the hours during which the War work was performed but that this information could be easily obtained. At this point of the discussion, Mr. A.J. Tete, Superintendent of the School Board suggested that a poll be conducted among the teachers of the New Orleans School System to ascertain how many of them were engaged in War work, the nature thereof and the hours during which it was done. In accordance with this suggestion, the Board adopted a resolution directing the Superintendent to prepare and cause questionnaires to be issued to each and every teacher in the New Orleans Public School System requesting information concerning their activities in War work after school hours.
Thereafter, the questionnaire was prepared and sent out by the Superintendent of the Board to all teachers in New Orleans, which number approximately 2000. Of this number, plaintiff was one of the few who failed and neglected to fill in or otherwise supply the information requested. The questionnaires, which are entitled "War Work Questionnaire", were addressed to the principals of the various schools in New Orleans and directed the principals to distribute them to the members of their faculties and return the completed forms to the Superintendent not later than February 4, 1943. Each questionnaire further states "Work referred to is other than that with School Board" followed by a heading entitled "Work for which remuneration is received", with blanks to be filled in with employer's name and address, the hours before and after school in which the work is done, services rendered or type of duties performed and a further space for "Remarks or further explanation". Following this is a heading "Volunteer Work" with blanks for the name of organization and hours, etc. in which such work is done.
The main contention of plaintiff is that the School Board was without power or right to require her to fill out the above described questionnaire because the information sought refers solely to matters of a private nature respecting her activities after school hours, as to which the board is neither concerned nor interested.
[1] If the School Board had attempted to require plaintiff to account to it for the use of her time after her duties at school were ended, with the purpose and design of harassing her or otherwise prying into her private life, there would be some basis for the proposition she has advanced. In such case, we would unhesitatingly say that the resolution of the Board providing for the issuance of the questionnaire was unreasonable and further that the requirement would be an undue invasion of her right of privacy. But we cannot regard that the questionnaire in the instant case sought to inquire into plaintiff's private affairs after school hours or that the information requested therein invaded her privacy in any respect. On the contrary, the issuance of the questionnaire not only had direct relation to school work (or a proposal to intensify the school curriculum to conform to the War effort) but it emanated as a consequence of the protest of plaintiff and others that it would be unfair to lengthen school hours for the reason that accelerated program might interfere with the War work of the teachers. Under these circumstances, it was wholly logical and right for the Board to investigate the nature of War work being performed by its teachers prior to the adoption of the proposed program to comply with the recommendations of the Federal Government and the State Board of Education. The questionnaire does not seek to elicit information concerning the use made by plaintiff of her leisure hours except to the extent of requiring her and others to furnish facts respecting the War work done by them in order that the program for the teaching of the youth of New Orleans might be revised so as not to conflict therewith. Hence, since it is manifest that the resolution of the School Board was a most reasonable one, it is difficult to understand why plaintiff would refuse to give the information sought to be elicited by the questionnaire. The record shows that plaintiff is a highly educated and intelligent lady and that she has, by her untiring efforts on behalf of the school teachers of the State during the last thirty years, attained prominence and respect in the community. But the attitude of defiance of authority displayed by her in the instant matter cannot be approved or condoned.
We also entertain no doubt whatever concerning the power of the School Board to adopt and enforce the resolution under attack. Act No. 100 of 1922, which creates the State Board of Education and the Parish School Boards and defines their respective duties and powers, specificially *Page 898 
grants to each School Board, by Section 20, authority "to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education, as it may deem proper", and Section 57 thereof declares "teachers shall faithfully enforce the school course of study and the regulations prescribed in pursuance of law; and if any teacher shall wilfully refuse or neglect to comply with such requirements, the parish superintendent shall withhold the salary of such teacher until the teacher properly performs his or her duties in such respect". In the recent case of State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153, 159, the Supreme Court, in speaking of Act No. 100 of 1922, said:
"Parish School Boards have the authority to establish public schools and provide for their maintenance and operation and are entrusted with the administrative and executive functions in conducting the public school system in the parish. The Board has the authority to employ, suspend and discharge teachers and it is its duty to supervise their work."
[2] However, counsel for plaintiff, relying upon the provisions of the Teachers' Tenure Law (Acts Nos. 58 and 79 of 1936), seem to believe that that law has limited or curtailed the authority of the various School Boards over permanent teachers. The Teachers' Tenure Law, as stated by the Court of Appeal for the Second Circuit in Andrews v. Union Parish School Board, La. App., 184 So. 574, 578, was designed to accomplish a laudable purpose — that is, it was intended to protect the worthy instructors of our Public Schools from "enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public, regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs". To this end, it was provided that no permanent teacher shall be removed from office except on written and signed charges of immorality, incompetency or wilful neglect of duty and then only if found guilty after a hearing by the School Board. And, in order to make certain that the teachers of our public school system would be relieved of any undue pressure or coercion on the part of the School Board, it was further stipulated that the Board would have no authority to make rules and regulations which might impair or nullify the provisions of the statute.
[3,4] But the Teachers' Tenure Law does not dislodge or in anywise restrict the general authority of the School Board to supervise its teachers in respect to the establishment or revision of the school curriculum or limit its right to pass reasonable rules and regulations in aid of its administrative power. The Act gives to the teachers of our Public School System tenure in office and arms the permanent teacher with a shield which protects him against discharge, suspension or demotion for causes other than those provided by the statute. On the other hand, it was never intended by the Legislature that the statute could be employed as a weapon in the hands of the school teacher for the purpose of frustrating or defeating the function for which the School Boards are created. Nor can it be resorted to in aid and defense of those who ignore, neglect or refuse to obey the mandates of the Board which are passed in pursuance of its administrative authority.
[5] Plaintiff was not discriminated against in the instant case for, while it is shown that a few other teachers did not fill out the questionnaire, information concerning the War work of those teachers was actually supplied by their principals and the completed forms returned to the Superintendent. In truth, plaintiff stands alone as the only teacher in the City of New Orleans who militantly refused to give the information requested. And, even if it were otherwise, the fact that others failed to answer the questionnaire would afford little excuse for plaintiff's behavior except that such fact could be given consideration in determining whether the action taken by the Board was discriminatory. In this connection, we may say that we find nothing in the conduct, either of the Board or its Superintendent, which would warrant a conclusion that their action was guided by impure motives.
[6] Counsel also contend that, since the Board reinstated plaintiff, it recognized that her suspension was illegal and that it is well established in our jurisprudence that, where a teacher is subsequently reinstated after suspension, she is entitled to recover her salary for the period of the suspension. The cases of Williams v. Livingston *Page 899 
Parish School Board, La. App., 191 So. 143, and Kundert v. Jefferson Parish School Board, 191 La. 102, 184 So. 555, are cited in support of this proposition.
The point is without merit. The cases relied upon are inapposite for the reason that the teachers involved in those matters had been illegally discharged and, consequently, it was held that reinstatement automatically entitled them to the salary which they lost during the period of suspension, provided that the claim for reinstatement has been asserted within a reasonable time. In the instant case, the suspension of plaintiff was just and proper as the Board felt that her act in refusing to fill out the questionnaire was not such a violation of her duty as to require an absolute dismissal. The fact that plaintiff received leniency from the Board and was reinstated to her former position cannot be used as an argument for restoration of her salary during the period of suspension.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.