633 So.2d 1235 (1994)
Denis ROUSSELLE
v.
PLAQUEMINES PARISH SCHOOL BOARD.
No. 93-C-1916.
Supreme Court of Louisiana.
February 28, 1994.
Rehearing Denied April 21, 1994.
*1238 Louis L. Robein, Jr., Gardner, Robein & Urann, Metairie, for applicant.
Gilbert V. Andry, III, Andry & Andry, Darryl W. Bubrig, Buras, Robert L. Hammonds, Hammonds & Sills, Baton Rouge, for respondent.
ORTIQUE, Justice.[1]
We granted writ to determine whether Act 779 of 1991, amending LSA-R.S. 17:444(B)(4)(c)(iv)[2] of the Teacher Tenure Law, applies to plaintiff's 1990 promotional contract with defendant Plaquemines Parish School Board (School Board). Since plaintiff, Denis Rousselle, was recommended by the Superintendent of Schools for reappointment as principal of Belle Chasse High School, but the School Board voted to not renew his contract, he filed suit to compel the School Board to offer him a new contract at the expiration of his "existing" 1990 contract in accordance with the provisions of Act 779 of 1991. The trial court applied the 1991 legislation to the 1990 contract and issued a writ of mandamus directing the School Board to negotiate and offer to Rousselle a new promotional contract for the position of principal upon the expiration of his existing promotional contract. The Fourth Circuit Court of Appeal reversed. We find the language of Act 779 of 1991 expressly provides for its retroactive application and, because the School Board is an agency of the state, the retroactivity is constitutionally permissible. We, therefore, reverse the judgment of the court of appeal and reinstate the judgment of the trial court.

I.
Rousselle is a tenured career employee of the Plaquemines Parish School Board in the level of Disciplinarian. He was promoted to the level of principal of Belle Chasse High School, a non-tenured position, by a 2 year promotional contract entered on July 3, 1990. Near the end of the contract term, Rousselle filed a petition for writ of mandamus against the School Board to force it to negotiate and offer him a new contract for the position of principal upon the expiration of his existing contract.
Rousselle's petition claimed the reappointment of his promotional position was subject to and regulated by LSA-R.S. 17:444(B)(4)(c)(iv), as amended by Act 779 of 1991. Since the Superintendent of Schools (Superintendent), Carroll A. Perlander, had rated his overall performance as principal "satisfactory" and had recommended him for reappointment as principal of Belle Chasse High School for the 1992-93 and the 1993-94 school sessions, and since his position had not been discontinued or eliminated, Rousselle claimed the School Board's failure to offer a new contract to him was in direct violation of LSA-R.S. 17:444(B)(4)(c)(iv).
*1239 The facts are not contested. All pertinent ones are contained in the stipulated exhibits and stipulations of counsel. By contract with the School Board, Rousselle was appointed to and accepted, the position of principal for a period of 2 school sessions, commencing July 9, 1990. (Exhibit 1, Contract of Employment For Promotional Appointment) The contract acknowledged that Rousselle's appointment constituted a promotion within the meaning and intendment of LSA-R.S. 17:444(B), as amended by Act 988 of 1985.[3] The contract also contained the acknowledgment that, by its own terms, the contract expires on the last day of the 1991-92 applicable School Board approved employee contractual calendar.[4] Another clause provided that, with the mutual consent of the parties, "this agreement may be renewed and/or renegotiated for an additional term."[5]
A document dated June 1, 1992, captioned: Certified Central Office and School Administrators Recommended By the Superintendent of Schools for Reappointment For School Sessions 1992-1993 And 1993-1994, and submitted by the Superintendent to the School Board, recommended Rousselle for the position of principal of Belle Chase High School for the next 2 school years. (Exhibit 2)
The Superintendent's annual evaluations of Rousselle, dated May 18, 1992 and May 20, 1991, both rated him as "satisfactory." (Exhibits 3 and 4) On the annual evaluations, only 3 cumulative ratings were possible: satisfactory, needs help and unsatisfactory. Rousselle received satisfactory ratings for both school years.[6] The cumulative ratings were based on the evaluations of 17 items on the checklist which were rated either satisfactory, unsatisfactory or not applicable. On both the 1991 and 1992 annual evaluations, Rousselle garnered 16 satisfactory ratings on the 17 items. The 1992 evaluation shows his only unsatisfactory rating was on an item in *1240 subsection B, the Administrative/Supervisory leadership section, regarding "Promoting the Administrative team concept." The 1991 evaluation did not indicate a rating for that particular item. Thus, it contained 16 satisfactory ratings and no unsatisfactory or needs help ratings.
Nonetheless, at the regular meeting of the School Board on June 1, 1992, it voted[7] not to renew Rousselle's contract and to extend his appointment on a day-to-day basis for 60 days. (Exhibit 5) The Superintendent notified Rousselle of the School Board's action by letter dated June 2, 1992. (Exhibit 6) Thereafter, advertisements were posted to fill the vacancy of principal for Belle Chase High School. (Exhibit 7)
Rousselle was then hired as principal of Belle Chasse High School for its Summer session, June 4 to August 7, 1992, the period covering his extended, day-to-day appointment. (Exhibit 8, State Department of Education Application for Approval of Secondary Summer School Courses Session 1992)
After a hearing, the trial court made peremptory the writ of mandamus issued against the School Board, ordering its representatives to "forthwith negotiate and offer a new contract" to Rousselle, "relative to his position as principal of Belle Chasse High School upon the expiration of the contract for that position between plaintiff and defendant now in existence and to expire on August 3, 1992." The court determined the 1991 legislation, amending LSA-R.S. 17:444(B), did not require retroactive application relative to Rousselle's contract because it provides for happenings occurring upon the expiration of existing contracts and not to provisions in the existing contract. The expiration of Rousselle's contract and the School Board's refusal to renew it were events occurring after the effective date of the 1991 Acts. Thus, the trial court determined that upon the effective date of the legislation, July 19, 1991, the various school boards of this state were bound by its provisions as to any contract which expired thereafter, irrespective of the date the contract was consummated.
Alternatively, the trial court determined the 1991 legislation made interpretive changes to existing law which must be applied retroactively to the original contract signed by Rousselle. In determining whether the legislation was substantive or interpretive legislation, the trial court commented that the rights granted by the Teacher Tenure Law, LSA-R.S. 17:441 et seq, both prior to the effective date of the 1991 legislation and after, inure substantially to the benefit of the school employees, not school boards. The court found the 1991 teacher tenure amendments did not change the substantive affect of the law, rather merely determined "the meaning of existing laws, they articulate procedural alterations in the overall scheme of protection of the competent principal, the determination of that fact to vest in the superintendent of schools."
The Court of Appeal reversed. Rousselle v. Plaquemines Parish School Board, 620 So.2d 946 (La.App. 4th Cir.1993). First, it determined the 1991 legislation completely changed the intent of LSA-R.S. 17:444(B) as it granted tenure-like protection to teachers promoted into higher paying positions, whereas the 1985 amendments to R.S. 17:444(B), the last significant changes to the statute, had prevented teachers under promotional contracts from acquiring tenure. Next, it determined the trial court had retroactively applied the 1991 legislation. It held that, as the legislature changed its position toward teacher tenure with the 1991 legislation, Act 779 of 1991 did not merely interpret LSA-R.S. 17:444(B), as amended by Act 988 of 1985, but substantively changed the law. Finally, the appellate court determined the conditions precedent to the contract's renewal were set at the onset of the original contract.
On Rousselle's application, we granted certiorari to determine whether Act 779 of 1991, amending LSA-R.S. 17:444(B)(4)(c)(iv), applies or relates back to his 1990 contract with the School Board, mandating it to negotiate and offer a new contract to him for the position of principal. Rousselle v. Plaquemines *1241 Parish School Board, 629 So.2d 402 (La.1993).

II.
The Louisiana Constitution of 1974 entrusts the legislature to provide for the education of the people of this state. See LSA-Const. Art. VIII, § 1. See also La. Const. of 1921, Art. 12, § 1. Accordingly, it directs the legislature to establish and maintain a public education system and it provides for the creation of the State Board of Elementary and Secondary Education, as a body corporate, with its powers, duties and responsibilities to be provided by law. See Id., LSA-Const. Art. VIII, § 3(A); Riley, Mary J., The Effect of Present Laws Concerning Tenure and Certification Upon Proposed Programs To Create Incentives for Public School Teachers Toward Excellence, 12 So.U.L.Rev. 133, 141 (1986). The Constitution also enjoins the legislature to create parish school boards and provides for the recognition of parish and city school board systems in existence on the Constitution's effective date, "subject to control and supervision by the State Board of Elementary and Secondary Education and the power of the legislature to enact laws affecting them." LSA-Const. Art. VIII, §§ 9, 10(A); 12 So. U.L.Rev. at 138. Cf. La. Const. of 1921, Art. 12, §§ 10, 11. Thus, all parish school boards are creatures of the Louisiana Constitution with their duties and obligations defined by statute. See St. John the Baptist Parish Ass'n of Educators v. Brown, 465 So.2d 674 (La.1985). See also Eiche v. Board of Elementary & Secondary Education, 582 So.2d 186 (La.1991).
Title 17 of the revised statutes, presently comprising sections 1 through 3959, contains this state's legislation on Education. This legislation fills two annotated volumes of the revised statutes, evincing that public education in Louisiana is highly regulated by state law. Included therein are the duties and obligations of parish school boards and laws protecting teacher tenure. For example, LSA-R.S. 17:51 et seq; 17:81 et seq, 17:151 et seq, 17:441 et seq, and 17:461 et seq.
The legislature entrusts the management of parish public schools to school boards. LSA-R.S. 17:51; 17:81 et seq; Caddo Parish School Bd. v. Board of Elections Sup'r of Caddo Parish, 384 So.2d 448 (La. 1980). As administrators of public education, school boards are agencies of the state. Jefferson Parish School Dist. v. Jefferson Parish Democratic Executive Committee, 246 La. 51, 163 So.2d 348 (1964). As such, they are authorized "to make such rules and regulations for [their] own government, not inconsistent with law or with regulations of the State Board of Elementary and Secondary Education, as [they individually] may deem proper." LSA-R.S. 17:81(C). They are commanded by LSA-R.S. 17:81, however, to "see that the provisions of the state school law are complied with." LSA-R.S. 17:81(A). One area of state school law with which parish school boards must comply is teacher tenure.
The Teacher Tenure Law (TTL), originally enacted by Act 100 of 1922 and amended and reenacted by Acts 58 and 79 of 1936, defines the status of Louisiana's public school teachers and outlines the procedures a school board must follow to discharge them. See LSA-R.S. 17:441-446 (generally); LSA-R.S. 17:461-464 (Orleans Parish); McCoy v. Tangipahoa Parish School Bd., 308 So.2d 382 (La.App. 1st Cir.1975), writ den., 310 So.2d 856 (La.1975); Comment, Louisiana's Teacher Tenure Act, 34 Loy.L.Rev. 517 (1988). The TTL gives to Louisiana's public school system teachers tenure in office and arms these permanent teachers with a shield protecting them against discharge, suspension or demotion for causes other than those provided by statute. Reed v. Orleans Parish School Bd., 21 So.2d 895 (La.App.Orl.1945). The motivation of the TTL, as amended in 1936, is the protection of teachers against political vengeance and reprisals. Kennington v. Red River Parish School Bd., 200 So. 514 (La.App. 2d Cir.1941). Cf. Lewing v. De Soto Parish School Bd., 238 La. 43, 113 So.2d 462 (1959). Its provisions are liberally construed by Louisiana courts in favor of teachers, as they are its intended beneficiaries. Howell v. Winn Parish School Bd., 332 So.2d 822 (La.1976); Lewing v. De Soto Parish School Board, supra; Kennington v. Red River Parish School Bd., supra; Andrews v. *1242 Union Parish School Bd., 184 So. 574 (La. App. 2d Cir.1938), aff'd, 191 La. 90, 184 So. 552 (1938).
The purpose of TTL is to insure teachers with security in the position, grade or status they have attained, and not merely to insure them with teaching employment. State ex rel. Bass v. Vernon Parish School Bd., 194 So. 74, 76 (La.App. 1st Cir.1940). It was intended to protect worthy teachers from "enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public, regardless of the vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs." Andrews v. Union Parish School Bd., 184 So. at 578; Reed v. Orleans Parish School Bd., 21 So.2d at 898. See State ex rel. Kundert v. Jefferson Parish School Bd., 191 La. 102, 184 So. 555 (1938) [this court ordered reinstatement of a permanent teacher employed by defendant for 9 years but dismissed when defendant adopted a resolution providing that any female teacher automatically terminated her employment upon marriage]; Kennington v. Red River Parish School Bd., supra [the lower courts prevented defendant from dismissing an ill, elderly school teacher who wished to retire, where the 3 attempts to discharge her were based on a school board member's deep-seated grudge against the teacher's husband].
Teacher Tenure Law provisions are for the benefit of the teacher, not the school boards. For the purposes of tenure, a teacher is an employee of a parish school board, including principals or superintendents, who holds a teacher's certificate and whose legal employment requires such a certificate. LSA-R.S. 17:441(1); Eiche v. Board of Elementary & Secondary Education, supra; McGraw v. Iberia Parish School Bd., 310 So.2d 139 (La.App. 3d Cir.1975), writ den., 313 So.2d 827 (La.1975); Mouras v. Jefferson Parish School Bd., 300 So.2d 540 (La.App. 4th Cir.1974), writ den., 302 So.2d 619 (La. 1974).
LSA-R.S. 17:444, the TTL provision regarding promotions to and employment into positions of higher salary and tenure, is presently subdivided into sections A and B. Section A applies only to those teachers whose promotion to a higher position occurred prior to July 1, 1985, and is, therefore, not pertinent to this case. LSA-R.S. 17:444(A)(4). Section B is relevant to this case, as it applies only to those promotions to or employment in a higher position occurring after August 1, 1985. LSA-R.S. 17:444(B)(5). Rousselle's 1990 contract acknowledged his was a promotion within the meaning of LSA-R.S. 17:444(B).
LSA-R.S. 17:444(B) was amended by Act 988 of 1985, relative to probationary periods and tenure of persons employed by the school board and promoted from a teaching position to one of higher salary after August 1, 1985. Act 988 of 1985. Since "teacher," for purposes of tenure, is defined as any "employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate," LSA-R.S. 17:441(1), the 1985 legislation had the effect of making promotions to positions beyond the level of teacher subject to contract, eliminating the acquisition of tenure beyond the teacher level. 34 Loy.L.Rev. at 519. The 1985 legislation essentially removed teachers from the protection of tenure when they were promoted to positions such as principal or superintendent. See Id. at 517.
Act 988 of 1985 amended LSA-R.S. 17:444 in an attempt to solve the recurring problem of the elimination or discontinuation of promotional positions and/or of the consolidation or demolitions of schools for economic reasons. See 12 So.U.L.Rev. at 151. See also Palone v. Jefferson Parish School Bd., 306 So.2d 679 (La.1975); Long v. Lafourche Parish School Bd., 460 So.2d 651 (La.App. 1st Cir.1984); Pasqua v. Lafourche Parish School Bd., 408 So.2d 438 (La.App. 1st Cir. 1981); McCoy v. Tangipahoa Parish School Bd., supra. It deprived a teacher promoted to a position of higher salary, i.e., principal or superintendent, on or after August 1, 1985 of the opportunity of acquiring permanent status in the promotion. LSA-R.S. *1243 17:444(B)(1), as amended by Act 988 of 1985; 12 So.U.L.Rev. at 151. Instead, the teacher's employment was by contract of not less than 2, nor more than 4 years. LSA-R.S. 17:444(B)(3), as amended by Act 988 of 1985; 12 So.U.L.Rev. at 151. The Act allowed for the renewal of the contract, but if not renewed, the teacher returned to a position paying the same salary as his former position. Id. As Professor Paul R. Baier of Louisiana State University Law Center reflected, "[i]t would seem that Teacher's Tenure Law was not meant to guarantee job security where there were no jobs." Baier, Paul R., Work of the Appellate Courts 1974-1975: Administrative Law and Procedure, 36 La.L.Rev. 464, 469 (1976).
Consequently, at the time Rousselle entered his 1990 contract with the School Board, the portion of LSA-R.S. 17:444(B) regarding renewals of contracts, provided as follows:

The board and the employee may enter into subsequent contracts for such employment. Not less than sixty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employee may negotiate and enter into a contract for subsequent employment. If any person so employed shall be found incompetent or inefficient or shall fail to fulfill the terms and performance objectives of his contract during the term of his employment, he shall be removable for such cause by the board; provided, however, that any person so removed shall have the right to written charges, notice of hearings, and a fair hearing before the board. If the person so removed had previously acquired regular and permanent status as a teacher: and should be removed by the board from his position in the manner hereinabove set forth, or should his contract not be renewed, he shall be returned to his former position as teacher, or one paying the same salary as his former position as teacher. LSA-R.S. 17:444(B)(3), as amended by Act 900 of 1988 (emphasis added).
Act 779 of 1991 amended LSA-R.S. 17:444(B), relative to promotional employment contracts subsequent to the first contract, by providing the conditions under which school boards "may fail to offer a new contract." Act 779 of 1991. The act returned a semblance of job protection to competent tenured teachers employed under promotional contracts when their promotional jobs continue in existence. As amended by Act 779, the pertinent provisions of LSA-R.S. 17:444(B) set forth:
§ 444. Promotions to and employment into positions of higher salary and tenure
* * * * * *
B.
* * * * * *
(4)
* * * * * *
(c)(i) The board and the employee may enter into subsequent contracts of employment. Not less than one hundred and twenty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employer may negotiate and enter into a contract for subsequent employment.
(ii) The employee may choose not to enter into subsequent contracts and may either terminate his employment or, if he has acquired permanent status as a teacher, resume employment as a teacher.
(iii) The employee shall be retained during the term of a contract unless the employee is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an employee can be removed during the contract period, he shall have a right to written charges and a fair hearing before the board after reasonable notice.
(iv) The board shall negotiate and offer a new contract at the expiration of each existing contract unless the superintendent recommends against a new contract based on an evaluation of the contractee as *1244 provided for in R.S. 17:391.5, or unless failure to offer a new contract is based on a cause sufficient to support a mid-contract termination as provided in Item (iii) of this Subparagraph, or unless the position has been discontinued, or unless the position has been eliminated as a result of district reorganization, provided that should the position be re-created, the employee, if still employed by the board, shall have the first right of refusal to the re-created position.
(v) If the contract employee is removed or not renewed and had previously acquired permanent status as a teacher, he shall be returned to his former position as a teacher or to a position paying the same salary as his former position as a teacher unless he chooses to terminate his position. (emphasis added)
This 1991 legislation exhibits a reaffirmance of the strong public policy of protecting teacher tenure. Striking an apparent compromise between the historical objective of teacher tenure laws and the departure from that objective by the 1985 legislation, Act 779 of 1991 returns a measure of job security to worthy teachers under promotional contracts whose promotional positions continue in existence. The legislation continues term contract employment and specifically provides for nonrenewal of the contract where the promotional position has been discontinued or the position has been eliminated as a result of district reorganization. Thus, it does not negate the curative qualities of the 1985 legislation by guaranteeing job security where there are no jobs. It merely prevents school boards from arbitrarily deciding not to renew the contract of a worthy teacher under a promotional contract who, like Rousselle, has received positive annual evaluations and a recommendation from the superintendent for contract renewal.

III.
The general rule against retroactive application of legislative enactments and its exceptions, is codified in LSA-C.C. art. 6. Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). It provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." Additionally, LSA-R.S. 1:2 provides that no statute is retroactive unless it is expressly so stated. It does not distinguish between substantive, procedural and interpretive laws as does article 6, but is generally construed as being co-extensive. See St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992).
A two-fold inquiry is required by article 6. First, it must be ascertained whether the enactment expresses legislative intent regarding retrospective or prospective application. If such intent is expressed, the inquiry ends. If no such intent is expressed, the enactment must be classified as either substantive, procedural or interpretive. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d at 816; Cole v. Celotex Corp., 599 So.2d at 1063. Substantive laws either establish new rules, rights, and duties or change existing ones, while interpretive laws merely establish the meaning the statute had from the time of its enactment. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d at 817. Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws. Segura v. Frank, 630 So.2d 714 (La.1994). However, since application of legislative enactments has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions, even where the legislature has expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. Id.
Examining the specific language contained in Act 779 of 1991, we find the legislature expressly provided for its retroactive application. The Act directs that the parish school boards "shall negotiate and offer a new contract at the expiration of each existing contract ..." (emphasis added) The enactment's reference to "each existing contract" manifests the legislature intended a limited retroactivity, i.e., retroactively to each 2 to 4 year promotional contract in *1245 existence on the enactment's effective date. Cf. Segura v. Frank, supra [wherein this court found the language in Act 237 of 1992 that "[t]his Act shall apply to all covered claims ... pending on or arising on or after the effective date of this Act," constitutes an expression of legislative intent to retroactively apply Act 237 of 1992]; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d at 817 [wherein this court stated we found in Cole v. Celotex Corp., 599 So. at 1064-65, evidence of a clear expression of legislative intent to apply the comparative negligence law only prospectively through the legislature's inclusion of the clause: `"[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective."']. Therefore, the first step of the article 6 inquiry is dispositive and no further inquiry is necessary.
The school board contends that this retroactive application impairs its vested contractual rights. In support of this contention it cites the impairment of contract prohibition set forth in Block v. Reliance Ins. Co., 433 So.2d 1040, 1044 (La.1983), which was followed by Yamaha Motor Corp. v. Bonfanti Industries, Inc., 589 So.2d 575 (La.App. 1st Cir.1991).
The consolidated case of Block involves 2 separate policies of insurance contracted between private parties, i.e., the insurance companies and their insureds. Both insurance contracts contained anti-stacking UM provisions. At the time the contracts were entered, anti-stacking provisions were legally unenforceable. However, an anti-stacking amendment allowing such provisions became effective after the contracts were entered, but prior to the motor vehicle accidents involving the 2 insureds. In the context of these private contracts, as well as in the context of the strong public policy always enforced by this court that innocent automobile accident victims should recover adequate damages from their UM insurer when the tortfeasor is without insurance or inadequately insured, we held that "[w]here the statute in question was not in effect at the time of contracting, it cannot be retroactively applied to alter the obligations of that contract, even though the act giving rise to the obligation occurs after the effective date of the statute." 433 So.2d at 1044. Thus, this court did not allow the statutory amendment to operate retroactively.
Block does not control the application of Act 779 relative to Rousselle's 1990 contract. Although both cases involve highly regulated areas of the law, in contrast to the situation in Block, instead of involving a public policy which did not favor retroactive application (the recovery of adequate damages of innocent automobile accident victims), this case involves a strong public policy which favors retroactivity (liberal construction of teacher tenure legislation providing the teachers with employment security). Nonetheless, we find Block is not dispositive merely because it involves a contract between private parties. Rousselle's contract is with a public employer which is an agency of the state.
Similar to Block, the appellate court in Yamaha held that a post-contract enactment requiring just cause for nonrenewal of a marine products dealership contract was not retroactively applicable to the parties' contract which expressly provided for renewal solely at the discretion of the distributor when it automatically expired by its own terms and the distributor declined to renew it. The contract between the private parties therein expressly provided it would automatically terminate on a certain date and the distributor, in its sole discretion, could renew the agreement. The appellate court found the distributor's substantive contractual right not to renew the contract was impaired by the post-contract legislative act. Thus, it did not apply the post-contract legislative act to alter the contractual terms agreed upon by the parties.
Again, like Block, Yamaha is not dispositive because it involves private parties. A further point of distinction is the 1991 legislation herein does not contradict or substantially impair terms of Rousselle's contract with the School Board as did the post-contract legislation in Yamaha. Rousselle's contract provides that it may be renewed upon mutual consent. Act 779 does not contradict this express terms, it describes the conditions under which a school board can withhold its consent. Still further, Yamaha does not involve *1246 an area of the law which is regulated as extensively as public education. Yamaha had no reason to anticipate its express contractual obligations might be altered by subsequent legislation, as should a school board regarding its contract with a tenured teacher. Cf. Segura v. Frank, at 631 [Against a background of pervasive state regulation of UM insurance and the state's broad power to regulate UM insurance, this court held "every UM policy incorporates the state's reserved power to regulate UM insurance." Thus, the defendant insurers "had reason to anticipate their obligations under the UM policies issued to [plaintiffs] might be altered by further legislation."]. Since the School Board is an agency of the state and is aware of the legislature's broad power and right to regulate teacher tenure, it should have anticipated that its obligations might be altered, defined or made more onerous by future legislation. Consequently, the retroactive application of Act 779 to Rousselle's 1990 contract is not prejudiced by the holdings of Block and Yamaha.
This case bears a greater resemblance to Andrews v. Union Parish School Board, 184 So. 574 (La.App. 2d Cir.1938), aff'd, 191 La. 90, 184 So. 552 (1938). Therein, the teacher had been employed by defendant school board for the regular school sessions of 1932-33, then 1934-35, 1935-36 and 1936-37. Effective July 28, 1936, the legislature amended the TTL. The defendant school board interpreted the legislation, Act 58 of 1936, as meaning those teachers employed prior to noon on July 28, 1936 were not employed under the TTL, while those hired after that date were. Act 58 provided that after a fixed probationary term of 3 years, such probationary teacher shall become a regular and permanent teacher in the employ of the school board. However, it also provided the beginning of the probationary term is to be "reckoned from the date of [the teacher's] first appointment." The appellate court expressly stated in 184 So. at 578, and this court implicitly found in 191 La. 90, 184 So. at 554, that the language was susceptible of retroactive effect, relating back to the plaintiff's first consecutive contract, the 1934-35 term. Thus, even though the TTL was amended only prior to the parties' contract for the 1936-37 term, its tenure provisions were found to relate back to two of the parties' previous contracts, giving the teacher the benefit of her prior service. This interpretation ostensively impacted on the terms of her prior annual contracts. Nonetheless, the appellate court aptly stated:
There is no sound reason, so far as we are able to discern, why plaintiff should have to teach three years after the passage of said Act, in order for a Board to determine whether she is capable and worthy as a teacher. The two years she had taught for it, immediately before the adoption of the Act, plus one year thereafter, was ample time in which to pass on her qualifications as a teacher. This Act, having for its object the purpose aforementioned, should be liberally construed in favor of that class of persons designed to be its beneficiaries. 184 So. at 578-579.
Like the appellate court liberally construed the 1936 teacher tenure legislation as relating back to prior contract service in Andrews, a liberal construction of the legislation in view of the purpose of the TTL, favors relating Act 779 of 1991 back to Rousselle's 1990 contract. It does not contradict the terms of the 1990 contract which stated that, "with mutual consent, this agreement may be renewed and/or renegotiated for an additional term." Act 779 draws upon the existence of the parties' 1990 contractual relationship. It merely clarifies the circumstances under which a school board may fail to renew a contract, by establishing the criteria or conditions on which the school board bases its decision to grant or withhold its consent. It returns LSA-R.S. 17:444(B) to conformance with the objective of the teacher tenure laws by eliminating the school board's discretion to arbitrarily decide not to renew a promotional contract.
The retroactive application of Act 779 to Rousselle's contract does not unconstitutionally impair the School Board's contractual rights. The School Board is an agency of the state and is aware of the legislature's broad and pervasive power to regulate public education. Accordingly, it is not protected by the constitutional prohibition against the *1247 legislature enacting laws which impair the obligation of contracts. LSA-Const. Art. I, § 23[8]; U.S. Const. Art. I, § 10[1][9]. See City of New Orleans v. New Orleans Water-Works Co., 142 U.S. 79, 12 S.Ct. 142, 35 L.Ed. 943 (1891); City of Gretna v. South New Orleans Light & Traction Co., 4 La. App. 480 (Orl.1926); Bell v. Haw, 8 Mart. (N.S.) 243 (1829). The inhibitions found in Article I, § 23 of the Constitution are protections for the citizens and not for the State. Fullilove v. U.S. Cas. Co. of New York, 129 So.2d 816 (La.App. 2d Cir.1961) [addressing claims of contravention of Art. IV, § 15 of Const. of 1921, now LSA-Const. Art. 1, § 23]. This state may constitutionally pass retrospective laws waiving or impairing its own rights or those of its subdivisions, or imposing upon itself or its subdivisions new liabilities with respect to transactions already passed, as long as private rights are not infringed. See Id.; 16A C.J.S. Constitutional Law § 395, pp. 319-320; Notes, Workmen's CompensationRetroactivity of Amendment to Louisiana's Workmen's Compensation Statute, 52 Tul.L.Rev. 907, 912-913 (1978) [regarding Fullilove: "The court distinguished divesting a state of its rights from divesting a person of his or her rights; the latter action oversteps constitutional limitations on state action, whereas no such proscriptions prevent a state from passing retrospective laws waiving or impairing its own vested rights."]. Thus, as the School Board is not protected by the contract clause prohibitions of the state or federal constitutions, there is no need to employ the four-step contract clause analysis[10] to determine whether Act 779 unconstitutionally impairs its contractual obligations.

DECREE
For the reasons stated, Act 779 of 1991, amending LSA-R.S. 17:444(B)(4)(c)(iv) of the Teacher Tenure Law, applies to Rousselle's 1990 contract with defendant Plaquemines Parish School Board. We, therefore, reverse the judgment of the Fourth Circuit Court of Appeal. The judgment of the trial court is reinstated.
REVERSED.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, MARCUS, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[2] LSA-R.S. 17:444(B)(4)(c)(iv), as amended by Act 779 of 1991, provides as follows:

The board shall negotiate and offer a new contract at the expiration of each existing contract unless the superintendent recommends against a new contract based on an evaluation of the contractee as provided for in R.S. 17:391.5, or unless failure to offer a new contract is based on a cause sufficient to support a mid-contract termination as provided in Item (iii) of this Subparagraph, or unless the position has been discontinued, or unless the position has been eliminated as a result of district reorganization, provided that should the position be re-created, the employee, if still employed by the board, shall have the first right of refusal to the re-created position.
[3] At the time the parties entered their 1990 contract, the pertinent provision of LSA-R.S. 17:444, as amended by Act 900 of 1988, effective July 21, 1988, provided as follows:

§ 444. Promotions and tenure
* * * * * *
B.
* * * * * *
(3) ... The board and the employee may enter into subsequent contracts for such employment. Not less than sixty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employee may negotiate and enter into a contract for subsequent employment. If any person so employed shall be found incompetent or inefficient or shall fail to fulfill the terms and performance objectives of his contract during the term of his employment, he shall be removable for such cause by the board; provided, however, that any person so removed shall have the right to written charges, notice of hearings, and a fair hearing before the board ...
The amendment to LSA-R.S. 17:444 by Act 729 of 1990, to provide for notice not less than 120 days prior to termination of a contract for employment, became effective July 23, 1990, after the parties entered their contract.
[4] Section VII of the contract, entitled Nonrenewal of Appointment, set forth the following:

(A) The parties hereto acknowledge that, by its terms, this contract expires on the last day of the 1991-92 applicable School Board approved employee contractual calendar.
(B) If the School Board decides not to renew this agreement, the Superintendent shall give the Appointee written notice thereof not less than sixty (60) days prior to the expiration date of this contract; provided, however, that failure to give Appointee written notice at least sixty (60) days prior to the expiration date of this contract shall not operate to renew this contract and appointment to be extended on a day-to-day basis until sixty (60) days have passed since such notice was given.
(C) In the event of nonrenewal, Appointee shall be returned to his former position or to the one paying at least the same salary as his former position, subject to the existing reduction in force policy of the School Board.
(D) Appointee also recognizes and acknowledges that the reduction in force policy of the Plaquemines Parish School Board is applicable and would control and take precedence over the terms and conditions of this contract.
[5] Section IX of the contract, entitled Renewal of Contract, set forth:

It is understood and agreed by both parties that, with mutual consent, this agreement may be renewed and/or renegotiated for an additional term and may contain such lawful terms and conditions as may then be established by the parties.
[6] The legend contained in Section III of the evaluation form directs that 13 or more satisfactory ratings on the 17 items equals an overall Satisfactory rating.
[7] The motion to not renew Rousselle's appointment passed with 5 "Yeas", 1 "nay", 2 "abstaining" and 1 "absent".
[8] LSA-Const. Art. I, § 23 provides as follows:

ARTICLE I. DECLARATION OF RIGHTS
* * * * * *
§ 23. Prohibited Laws
Section 23. No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
[9] U.S. Const. Art. I, § 10[1] provides in pertinent part as follows:

No State shall ... pass any Bill of Attainder, ex post facto law, or Law impairing the Obligations of Contracts ...
This court has described the provisions of U.S. Const. Art. I, § 10[1] and LSA-Const. Art. I, § 23 as being "virtually identical" and "substantially equivalent." Segura v. Frank, at 728; Board of Com'rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d 281, 291 (La.1986).
[10] The four-step contract clause analysis requires the reviewing court to determine whether the state law would, in fact, impair a contractual relationship; if impairment is found, it requires a determination of whether the impairment is of constitutional dimensions; if the state regulation constitutes a substantial impairment, it requires a determination of whether a significant and legitimate public purpose justifies the regulation; finally, if a significant and legitimate public purpose exists, it requires a determination of whether the adjustment of the rights and responsibilities of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. Segura v. Frank, at 728-29; Board of Com'rs of Orleans Levee Dist. v. Dept. of Natural Resources, 496 So.2d at 292-293; Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 410-413, 103 S.Ct. 697, 704-705, 74 L.Ed.2d 569 (1983).