liCARAWAY, Judge.
Urging the protection of Louisiana’s teacher tenure law, Charles Milstead, Jr., the superintendent of schools for Jackson Parish, filed this action against the school board seeking to require the board to renew his contract of employment for the position of superintendent. The trial court dismissed his suit finding that no cause of action exists for a superintendent of schools under the teacher tenure law. Based upon our review of the specific law providing for the office of the parish superintendent of schools, we agree that the teacher tenure law does not govern the school board’s right to re-elect or dismiss the superintendent, and we affirm the dismissal of his suit.

Facts

Milstead was first employed by the Jackson Parish School Board in 1973 as a teacher. He was then promoted to principal, supervisor of secondary education and finally, in 1991, the school board elected Milstead its superintendent of schools. Milstead’s last written contract with the school board extended his employment as superintendent from July 1, 1993 until June 30, 1996. No provision in the contract required the school board to provide Milstead with any notice if it did not intend to renew the agreement. The contract provided only that “the parties may renegotiate for such additional extensions ... that the parties find to be in Employer’s and Employee’s best interest.” In February 1996, the school board voted to extend Milstead’s employment contract for an additional two years, until June 30, 1998, but no new written agreement was prepared or executed.
In February 1998, the school board began discussing whether to extend Milstead’s employment agreement. The discussions continued through the spring, and on June 1, 1998, rather than renewing Milstead’s contract, the board voted to ^advertise and accept applications for the position. Milstead was informed of this action and given the opportunity to submit an application. He subsequently submitted his application and was interviewed with the rest of the qualified applicants.
*980 On June 5, 1998, Milstead filed a petition for mandamus alleging the application of Louisiana Teachers’ Tenure Act, La. R.S. 17:441 et seq., and the school board’s improper termination of his employment. Citing La. R.S. 17:444(B), he asserted that in light of the school board’s failure to notify him timely and evaluate him properly, he was entitled to a writ of mandamus “directing the Jackson Parish School Board to negotiate and offer petitioner a new contract of employment as Superintendent of Schools for a term of not less than two years nor more than four years.” In response, the school board filed a peremptory exception of no cause of action stating that La. R.S. 17:444(B) does not apply to parish school superintendents. Due to the pendency of this litigation, the school board elected an interim superintendent to begin serving on July 1, 1998 at the expiration of Milstead’s contract and returned Milstead to his prior position as supervisor of secondary education.
On July 2, 1998, the trial court sustained the school board’s exception of no cause of action.

Discussion

This dispute involves Milstead’s status as both a tenured teacher and the superintendent of schools in Jackson Parish. Louisiana law contains provisions dealing with both positions in the school system which must be interpreted for the resolution of this dispute.

__[gParish Superintendent of Schools

The Louisiana Constitution states that the legislature shall create parish school boards and provide for the election of their members. La. Const, art. 8 § 9(A). School boards are the agencies of the state charged to “see that the provisions of state school law are complied with.” La. R.S. 17:81(A); Rousselle v. Plaquemines Parish School Board, 93-1916 (La.2/28/94), 633 So.2d 1235.
The Constitution specifically provides that “each parish board shall elect a superintendent of the parish schools.” La. Const, art. 8 § 9(B) (emphasis added). This provision gives no directive to the legislature to further provide for such election of the superintendent and does not specify a term for the superintendent. It is significant to note that at the time of the 1974 Constitution, two existing statutes set parameters for a school board’s election of the superintendent. La. R.S. 17:54 provided that the superintendent’s election could extend “for a period not to exceed four years” and, despite certain amendments to La. R.S. 17:54 discussed below, this language regarding the superintendent’s maximum term remains the law. Additionally, La. R.S. 42:3 provided in 1974, as it does today, that “the term of office of all ... officials elected by any state, district, parochial or municipal board shall not be for a longer period of time than the term of office of the membership of the board electing them so that each respective board shall elect its own officers_” (Emphasis supplied.)
In Hayden v. Richland Parish School Board, 554 So.2d 164 (La.App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990), this court interpreted La. R.S. 42:3 and R.S. 17:54 together for the resolution of a dispute regarding the right of a newly elected school board to elect a superintendent. Despite superintendent Hayden’s four-year contract extending through 1990, this court affirmed the rightpof the school board, newly elected in 1987, to elect a new superintendent and to disregard Hayden’s contract. This court found that the two statutes read in pari materia caused Hayden’s contractual term to end by operation of law.
In reaching this decision, the court said:
We find the reasoning of the court in Juneau v. Avoyelles Parish Police Jury, 482 So.2d 1022 (La.App. 3d Cir.1986), and the trial court to be persuasive. If La. R.S. 42:3 was disregarded, then public bodies could be forced by the election of officials by previous boards to continue in office officials and employees whose ideas and goals were opposed to their own. This situation would create ineffective governing bodies and was precisely what the legislature intended to prevent by its enactment of La. R.S. 42:3. The superintendent of schools is an employee of the school board and as such should represent the values, policies and attitudes of the duly elected school board in order to effectively *981 implement the programs of that board. Obviously, the superintendent would handle most of the day-to-day operations of the parish schools and thus the sitting school board should be entitled to elect a superintendent of its own choosing for this serious responsibility. As a practical matter, if La. R.S. 42:3 was not applicable, an outgoing board could always elect a superintendent to a long-term contract shortly before the expiration of its term, thereby saddling the incoming board with a superintendent whose views and policies were inconsistent or contrary to those of the incoming board, effectively thwarting the powers and goals of the new board.
Id. at 168-169. See also, State ex rel. Russell v. Richardson, 178 La. 1029, 152 So. 748 (1934).
Since the time of the dispute in Hayden, two amendments to the portion of the statute now designated as La. R.S. 17:54(B) have occurred, resulting in the following:
La. R.S. 17:54(B). “Notwithstanding the provisions of R.S. 42:3, each ... parish school board shall elect a superintendent of schools ... for a period not to exceed four years, which period, however, may extend no longer than two years after the expiration of the term of office of the membership of the board electing the superintendent.”
|5The latest of these amendments occurred this year with Act 107 which specified that no superintendent’s term or contract could extend longer than two years into the term of office of the next elected school board.
There is one other provision regarding a superintendent’s term which is significant for this dispute. The provision now designated as La. R.S. 17:54(C) has remained unchanged in the law since 1922 and provides as follows:
“A ... parish superintendent found incompetent, inefficient, or unworthy, shall be removable for such cause by a majority vote of the membership of the school board at any regular meeting or at any special meeting after due notice.”
While this provision applies for a removal of the superintendent during his term, and not at the end of the term as in this case, we note that the three grounds for removal, particularly the ground of unworthiness, leave much discretion in the school board members to remove a superintendent.
In light of the above constitutional and statutory provisions specifically dealing with the office of the parish superintendent of schools, we find that the observations made by this court in Hayden and quoted above still hold true despite the amendments to La. R.S. 17:54(B). The superintendent is a public official elected by the majority of the school board’s members who themselves, in elections every four years (La. R.S. 17:52), are responsible to the public for the management of the schools. The implementation and realization of the goals of each elected board center around the choice of the superintendent, a choice which the constitution mandates through a recurring election process. The concept of tenure for the office of superintendent is nowhere reflected in these provisions of law and is directly in conflict with their underlying strong policy requiring the superintendent to be immediately responsive and answerable to the elected ^governing body. Nevertheless, we will now examine the teacher tenure law to determine whether its provisions specifically apply to the office of superintendent so as to modify the above law and provide superintendent Milstead with a cause of action in this case.

Teacher Tenure Law

Louisiana’s teacher tenure law was recently reviewed by the Louisiana Supreme Court in Rousselle v. Plaquemines Parish School Board, supra. In that decision, the court quoted this court’s early opinion in Andrews v. Union Parish School Board, 184 So. 574, 578 (La.App. 2d Cir.1938) for the general policy underlying the teacher tenure law. The supreme court said:
“[The teacher tenure law] was intended to protect worthy teachers from ‘enforced yielding to the political preferences of those theretofore having the power to grant or withhold employment to them; and to vouchsafe to such teachers employment, after a long term of satisfactory service to the public, regardless of the vicissitudes of politics or the likes or dis *982 likes of those charged with the administration of school affairs.’ ”
Rousselle, supra, at 1242.
The dispute in Rousselle involved the extension of a high school principal’s contract and also concerned the application of La. R.S. 17:444(B) which is the statute now urged by Milstead as the basis of his claim. Milstead asserts that the school board ignored the statute, failing to timely conduct an evaluation of his job performance, and that any failure to extend his contract must be based on an unsatisfactory evaluation.
The pertinent provisions of the relevant subsections of La. R.S. 17:444(B) are:
B(l) Whenever a teacher who has acquired permanent status, as set forth in R.S. 17:442, in a parish or city school system is promoted by the employing school board by moving such teacher from a position of lower salary to one of higher salary, such teacher shall not gain |7permanent status in the position to which he is promoted, but shall retain permanent status acquired as a teacher, pursuant to R.S. 17:442.
% íj; íjí % s|í Hí
B(3) Whenever a person is employed to take a position that pays a higher salary than that paid to a teacher in the system and the employment in the position of higher salary requires a teaching certificate and/or any appropriate administrative/supervisory endorsement, all the provisions of this Subsection with regard to employment pursuant to a written contract containing performance objectives for a period of not more than four nor less than two years shall apply. Such a person shall, however, automatically acquire permanent status in the position of teacher after the successful completion of three years of service in the position for which he was hired provided the person is qualified to teach.
* * H* # ‡
B(4)(c)(i) The board and the employee may enter into subsequent contracts of employment. Not less than one hundred and twenty days prior to the termination of such a contract, the superintendent shall notify the employee of termination of employment under such contract, or in lieu thereof the board and the employer [sic] may negotiate and enter into a contract for subsequent employment.
[[Image here]]
B(4)(c)(iii) The employee shall be retained during the term of a contract unless the employee is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an employee can be removed during the contract period, he shall have the right to written charges and a fair hearing before the board after reasonable written notice.
B(4)(c)(iv) The board shall negotiate and offer a new contract at the expiration of each existing contract unless the superintendent recommends against a new contract based on an evaluation of the contrac-tee as provided for in R.S. 17:391.5, or unless failure to offer a new contract is based on a cause sufficient to support a mid-contract termination as provided in Item (iii) of this Subparagraph, or unless the position has been discontinued, or unless the position has been eliminated as a result of district reorganization, provided that should the position be recreated, the employee, if still employed by the board, shall have first right of refusal to the recreated position.
B(4)(c)(v) If the contracted employee is removed or not renewed and had previously acquired permanent status as a teacher, he shall be returned to his former position as a teacher or to a position paying the same salary as his former position as a teacher unless he chooses to terminate his employment.
In ruling against the school board in Rous-selle, the supreme court interpreted and applied these provisions which had been significantly amended in |s1991 during the time of the plaintiffs employment contract. The court found that school board employees under contracts in positions above the level of teacher were provided tenure-like protection under Section 444(B). The court stated that Section 444(B) “prevents school boards from *983 arbitrarily deciding not to renew the contract of a worthy teacher under a promotional contract who, like Rousselle, has received positive annual evaluations and a recommendation from the superintendent for contract renewal.” Id. at 1244.
In light of the above review of two distinct areas of our law — the law dealing with the office of superintendent of schools and the teacher tenure law for contract administrative employees of a school board — there is an obvious conflict with any attempt to apply both sections of the law to this dispute. While a superintendent, as chief administrative officer, must be the choice of each elected school board to carry out the board’s policies and attitudes determined through a political process, a superintendent, as a tenured contract employee, would seek to escape from the “vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs.”
Apart from this broad policy conflict, the two bodies of law conflict in specific details. The law for superintendents, which never speaks of a contract of employment, allows a school board to elect a superintendent for any term the board might choose up to four years. Section 444(B) concerns contracts with employees for no less than two nor more than four years. The reasons listed for dismissal for cause during the term of employment of the superintendent under La. R.S. 17:54(C) differ from the reasons for dismissal under Section 444B(4)(e)(iii). The law for superintendents clearly indicates that one school board cannot elect a superintendent for a term that would extend significantly into the term of the next | selected school board. Section 444(B) would allow one school board to fix within a superintendent’s contract, performance criterion and objectives, which could be routinely achieved by the superintendent so as to extend his contract indefinitely despite the election of new school board members with different objec-fives.[1] Finally, while Section 444(B) specifically sets forth that the superintendent shall conduct the employee performance evaluations, the statute does not address who conducts such evaluation of the superintendent. This is another indication that the legislature did not have the superintendent’s job in mind in enacting Section 444(B).
In this context of statutory construction, with conflict between the statutes, the laws specifically directed at the office of the superintendent must prevail over the more general statute dealing with tenure for employees under contract with a school board. See, State Through Div. of Admin. v. McInnis Bros. Const., 97-0742 (La.10/2/97), 701 So.2d 937; Lieber v. Caddo Levee Dist. Bd. of Commissioners, 27,267 (La.App.2d Cir.8/23/95), 660 So.2d 188. Moreover, with a specific constitutional provision addressing the election of superintendent of schools, the legislature is presumed to have enacted Section 444(B) with deliberation and with full knowledge of the existing constitutional provision and laws on the same subject matter. Colwell v. State, Office of Attorney General, 506 So.2d 941 (La.App. 1st Cir.1987), writ denied, 508 So.2d 89 (La.1987). The construction urged for Section 444(B), which would allow an existing school board to thwart the constitutional right of the next elected school board to elect a superintendent of its lipchoosing, does not exhibit the legislative purpose for the law. We therefore agree with the trial court that Section 444(B) does not provide Milstead with a cause of action in this case.
Finally, for the same reasons expressed above regarding our construction of the specific statutes detailing the office of superintendent of schools, we likewise reject Mil-stead’s argument that the 1998 legislative change to La. R.S. 17:54, noted above, and the simultaneous change to the language of Section 444(B)[2] accomplished through Act *984 107, clarifies the law in any respect so that Section 444(B) must be applied in this case. This 1998 legislation also specifically states that it is to be applied prospectively only.

Conclusion

The trial court’s judgment maintaining the school board’s exception of no cause of action over the claim of Milstead is affirmed. Costs of this appeal are assessed to appellant.
AFFIRMED.

. Milstead argues in this instance that a superintendent evaluation form had been adopted by the Jackson Parish School Board and that those criterion must be applied to him in this case to determine whether his contact must be extended. We reject that argument for the policy reasons expressed herein noting that the newly elected school board which will take office in 1999 should have unfettered discretion in setting their own standards for the measure of a superintendent’s performance.

. Act 107 of 1998 added a lead-in clause to Section 444(B) at subparts (3) and (4)(a)(i) and (ii) which states: "except as provided otherwise by R.S. 17:54(B), relative to the maximum term *984 of a superintendent elected by a city or parish school board.”