BILLIE HUNT
v.
EAST BATON ROUGE PARISH SCHOOL BOARD
No. 2009 CA 0220.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not designated for Publication.
OTHA C. NELSON, SR., Nelson & Nelson, L.L.P. Baton Rouge, LA, Attorney for Plaintiff-Appellant. Billie Hunt
KENNETH F. SILLS, Hammonds & Sills Baton Rouge, LA, Attorney for Defendant-Appellee. East Baton Rouge Parish School Board
Before: PARRO, KUHN, and McDONALD, JJ.
PARRO, J.
Billie Hunt, a teacher in the East Baton Rouge Parish public school system, appeals a judgment upholding her suspension from teaching in the parish public school system for a period of ten years, based on a finding at a tenure hearing of willful neglect of duty arising out of instances of tardiness and use of profane language in the classroom. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Ms. Hunt was a permanent teacher with twenty-two years of experience in the East Baton Rouge Parish public school system. The charges of willful neglect of duty arose when she was serving as a math teacher at Belaire High School during the beginning of the 2006 school year. She was charged with four counts of willful neglect of duty, as follows: (1) tardiness, because she failed to scan in by 6:50 a.m. on fifteen separate occasions between August 17, 2006, and September 19, 2006; (2) calling students "dogs" and telling them that they were all in the "dog house"; (3) using the profane words "damn," "hell," and "bastard" in the classroom; and (4) leaving her classroom unsupervised. At a tenure hearing on December 13, 2006, the East Baton Rouge Parish School Board (School Board) found Ms. Hunt guilty of persistent tardiness and use of profane words in the classroom.[1] The Superintendent recommended termination of her position with the East Baton Rouge Parish public school system. Instead, the School Board voted to suspend her from teaching in the parish public school system for ten years without pay and benefits.
Ms. Hunt filed a petition in the district court, seeking review of the School Board's decision and reinstatement to her teaching position.[2] After a hearing, the court upheld the School Board's decision. In this appeal, Ms. Hunt argues the court committed manifest and reversible error in that judgment.

APPLICABLE LAW
Louisiana Revised Statute 17:443 provides that a permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty; incompetency, dishonesty, or immorality; or being a member of or contributing to any group, organization, movement, or corporation prohibited by law or injunction from operating in the State of Louisiana. Removal or other discipline cannot occur unless the teacher is found guilty after a due and legal hearing by the school board of the parish or city. See LSA-R.S. 17:444.[3] The teacher tenure law is to be liberally construed by Louisiana courts in favor of teachers, as they, not school boards, are its intended beneficiaries. Rousselle v. Plaquemines Parish School Bd., 93-1916 (La. 2/28/94), 633 So.2d 1235, 1241-42.
A teacher can be found guilty of willful neglect of duty if he had "some knowledge" that his actions were contrary to school policy based on "general knowledge" concerning the responsibility and conduct of teachers. Howard v. West Baton Rouge Parish School Bd., 00-3234 (La. 6/29/01), 793 So.2d 153, 156. Teachers may also be dismissed when their conduct is so outrageous or egregious that willful neglect of duty can be found without a specific action or failure to act in contravention of a direct order or an identifiable school policy. Spurlock v. East Feliciana Parish School Bd., 03-1879 (La. App. 1st Cir. 6/25/04), 885 So.2d 1225, 1228, writ denied, 04-1844 (La. 10/29/04), 885 So.2d 591.
Judicial review of tenure proceedings must be limited to an inquiry of whether the school board complied with the statutory formalities under Louisiana's teacher tenure law and whether the school board's findings were supported by substantial evidence. Substantial evidence is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions. Wise v. Bossier Parish School Bd., 02-1525 (La. 6/27/03), 851 So.2d 1090, 1094. The district court must give great deference to the school board's findings of fact and credibility in conducting such an examination. Arriola v. Orleans Parish Sch. Bd., 01-1878 (La. 2/26/02), 809 So.2d 932, 941. Thus, the school board's judgment should not be reversed in the absence of a clear showing of abuse of discretion. Id. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. See Burst v. Bd. of Com'rs. Port of New Orleans,93-2069 (La. App. 1st Cir. 10/7/94), 646 So.2d 955, 958, writ not considered, 95-0265 (La. 3/24/95), 651 So.2d 284. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. See Coliseum Square Assoc. v. City of New Orleans, 544 So.2d 351, 360 (La. 1989).

ANALYSIS
Ms. Hunt does not allege any defect in the School Board's compliance with the statutory formalities under the teacher tenure law or in its conduct of the tenure hearing, and our review of the record shows that all the requirements were scrupulously met. Therefore, the only issue before this court is whether the School Board's findings were supported by substantial evidence or were an abuse of discretion.
The record shows that Ms. Hunt consistently violated a school policy concerning tardiness. From the very beginning of the school year, she began arriving ten to fifteen minutes late. Principal Robert W. Webb, Jr. met with her on Friday, August 11, 2006, to discuss her tardiness that day and the previous day and to emphasize the school's requirement that she scan in by 6:50 a.m. every morning. A written notice of this violation was signed by Ms. Hunt and Mr. Webb. Despite this verbal and written warning, she again scanned in late on August 17, 2006, and on fourteen other occasions between then and September 19, 2006. Because of the Labor Day holiday, there were only twenty-two school days between those two dates, and she was late fifteen of those days. Another written warning about tardiness had been entered in her record on August 21, 2006, and on September 21, 2006, Mr. Webb requested that a job action be taken concerning her performance. At the tenure hearing, Ms. Hunt acknowledged that she knew the school policy and that she had been late on numerous occasions, but offered various reasons to excuse her conduct. She stated that she had never been late for the beginning of her first class period, but admitted there were other duties that teachers were expected to perform before classes began in the morning.
We note that Ms. Hunt persisted in arriving late after several verbal and written warnings. Moreover, she had been disciplined the previous year at another school for the same type of violation. We find there was substantial evidence that Ms. Hunt contravened a direct order of her principal and an identifiable school policy on numerous occasions. Therefore, the School Board's finding of willful neglect of duty concerning her tardiness was not arbitrary, capricious, or an abuse of discretion.
The other charge for which the School Board disciplined her was the use of profane language in the classroom. This problem of inappropriate language had also resulted in discipline at her previous school, where she admitted using the expression, "Nigga, please," with her students. At the tenure hearing, a senior who had been in Ms. Hunt's geometry class at Belaire said that after the first few class periods, Ms. Hunt began using profanity in class, telling one student to "Shut the `H' up," and using words and expressions like "Goddamn it," "Dammit," and "Jackass" in every class. The student testified that although these words were never directed at her, she found Ms. Hunt's language offensive and insulting. A sophomore Algebra I student said Ms. Hunt would mumble "bastards" under her breath at the students and would slam down papers and say, "To hell with ya'll," "Damn you," and "Dammit" when the class would get rowdy. This student's mother testified that she requested a conference with Mr. Webb in early September to discuss what her daughter had been telling her about Ms. Hunt's behavior and language in class. She stated that during this conference with the principal, Ms. Hunt admitted using the expression, "Hell, no," explaining that because the word "Hell" was in the Bible, using it was not cursing. Following this conference with Ms. Hunt, the concerned parent, and her daughter, Mr. Webb wrote a letter to Ms. Hunt, stating that her use of the word "hell" in class, as she had admitted doing, was totally unacceptable. Mr. Webb testified that as part of his investigation of Ms. Hunt's actions, he had asked her students for comments concerning her classroom behavior; several of them, including the two girls who testified at the hearing, wrote that she "curses" and "cuss us out." During her own testimony at the tenure hearing, Ms. Hunt reiterated the Biblical explanation for her use of the word "Hell," but denied calling the children "bastards" under her breath or using any of the other curse words or profanity that the students had described.
Based on our review of the record, we conclude that the School Board had substantial competent evidence of Ms. Hunt's regular use of profanity in her classroom, a clear violation of a known school policy. Ms. Hunt was represented by counsel at the tenure hearing, and her attorney cross-examined all the witnesses who testified concerning her negative behavior. She had a full opportunity to testify and present her side of the issue. The members of the School Board who participated in the tenure hearing also had the opportunity to question the witnesses, including Ms. Hunt, and were able to observe them and evaluate their credibility. The record shows that the School Board's finding concerning Ms. Hunt's use of profanity in the classroom was supported by substantial evidence, and its decision to suspend Ms. Hunt for ten years without pay and benefits was not an abuse of discretion.

CONCLUSION
For the above and foregoing reasons, the judgment of the district court is affirmed. All costs of this appeal are assessed to Billie Hunt.
AFFIRMED.
Mcdonald, J. CONCURRING:
I respectfully concur in the result reached by the majority. A ten year suspension is tantamount to a termination. While this is certainly a severe penalty, I cannot say it is an abuse of discretion.
NOTES
[1] At another parish public school in 2005, Ms. Hunt had been suspended for ten days without pay for tardiness and use of inappropriate language in the classroom. She waived a tenure hearing in that instance and accepted the suspension with the understanding that further violations of school policies and procedures would result in a tenure hearing and a recommendation of termination.
[2] However, the record shows Ms. Hunt voluntarily terminated her employment by retiring on February 1, 2007.
[3] The teacher tenure law, originally enacted by Act 100 of 1922 and amended and reenacted by Acts 58 and 79 of 1936, defines the status of Louisiana's public school teachers and outlines the procedures a school board must follow to discharge them. See generally LSA-R.S. 17:441-446; Rousselle v. Plaquemines Parish School Bd., 93-1916 (La. 2/28/94), 633 So.2d 1235, 1241. The law gives tenure in office to Louisiana public school teachers and arms them with a shield protecting them against discharge, suspension, or demotion for causes other than those provided by statute. The motivation of the teacher tenure law, as amended in 1936, is the protection of teachers against political vengeance and reprisals. Id.