**CONNOLLY (R. T. MOORE et al., Intervenors) v. COMMERCIAL NAT. BANK IN SHREVEPORT.**

Civ. No. 83.

United States District Court
W. D. Louisiana, Shreveport Division.

May 1, 1950.

Marion K. Smith, Shreveport, Louisiana, Monte M. Lemann, Monroe & Lemann, New Orleans, Louisiana, for plaintiff.

Otis W. Bullock, Shreveport, Louisiana, S. W. Plauche, Jr., Lake Charles, Louisiana, for intervenors.

Sidney M. Cook, Shreveport, Louisiana, Sidney L. Herold, Shreveport, Louisiana, for defendant.

DAWKINS, Chief Judge.

This court has the duty of entering in the present case a judgment in conformity with the latest decision of the Court of Appeals. 5 Cir., 176 F.2d 1004, 177 F.2d 514. This requires, it is believed, that an attempt should be made to carry out the decision of the majority that the New Bank be credited with six per cent (6%) interest on daily balances on all Class "B" assets, notwithstanding in the decision they were held to be the property in full ownership of the New Bank.

At the suggestion of this court, counsel for the parties have stipulated the points of difference between them as to what the judgment should contain, as follows:

"In order to simplify the hearing of this matter, counsel, under the direction of the Court, here state the differences between them in respect of these two proposed drafts of the final decree, all relevant facts being disclosed by the record now before the Court, which stipulation is to be made a matter of record herein.

"1. The draft submitted by plaintiff and intervenors would decree a money judgment in favor of them, and against the defendant, for taxes paid by the New Bank on Class B real estate and charged against the Old Bank.

"The draft submitted by defendant would make no allowance to the Old Bank for such taxes.

"2. The draft submitted by plaintiff and intervenors would deny the defendant any compensation other than $1.00 for services in administering Class C assets.

"The draft submitted by defendant would allow the New Bank compensation at the rate of five (5%) per cent for such administration up to the date of the appointment of the Receiver.

"3. The draft submitted by plaintiff and intervenors would award the plaintiff judgment against the defendant for interest on daily credit balances in favor of the Old Bank, from and after the final payment of the liabilities assumed.

"The draft submitted by defendant would allow interest on the principal amount found due, from the date of the final decree.

"4. There is a difference between the two drafts in respect of the amount due by the defendant bank on account of tax savings on Class C real estate. That difference arises out of the different methods of computation adopted by the accountants for the two sides.

"The accountant for plaintiff and intervenors has taken the entire amount of tax savings, and allocated them respectively to B and C assets in the proportion that each, i.e. B and C, bears to the total of B and C.

"Defendant's accountant has computed the so-called tax savings on B assets, and deducted that amount from the total tax savings, thus allocating the difference to C."

It is also my interpretation of the opinion that the Old Bank should be charged with the taxes upon the real property placed in Class "B" assets. However illogical such a holding may be, it is not within the province of this court to change or correct that finding. The only basis I can see for holding that the Old Bank should pay taxes upon property owned by the New Bank, is the theory that they come under the head of expenses in the contract of 1932, by which it agreed to liquidate the affairs of the Old Bank, and the fact that the latter received credit for the revenues earned from both Class "B" and "C" assets. Of course, the New Bank realized the large profits of six per cent (6%) on daily balances of assets in return for its obligation or promise (not money loaned) to pay the debts of the Old Bank out of those assets and for services rendered in the administration of the entire affairs other than Class "C". The record shows that the contract of 1932 was written by a bank examiner, who, on organization of the new bank, became an active vice-president thereof. In such circumstances, the general rules of construction require that the contract be interpreted more favorably to the Old Bank. However, here again this court has to follow the conclusions of the majority of the Court of Appeals.

As to compensation for the administration of Class "C" assets, because of the very harsh terms of the contract of 1932, which permitted the New Bank to reap such profits, I agree with the views expressed, both in the latest opinion and by the author thereof in his dissenting opinion upon the first appeal, that compensation for administering these assets should be nominal and, accordingly, it is fixed at the sum of $100.

█ On the question of interest to be paid on the balance due the Old Bank, the parties in their contract adopted the rule of daily balances as to interest to be paid the New Bank, and it is believed that equity requires the use of a similar basis for calculating interest against it when becoming the debtor for money due the Old Bank. According to the law of Louisiana, compensation or off-set takes place when the parties become mutually indebted to each other without more, La. Revised Civil Code of 1870, arts. 2207–2209, and the balance ultimately found to be due in this instance merely establishes the extent of that indebtedness. Defendant has had the possession and use of the excess since it was received several years ago, while this litigation was pending, and justice would seem to require that it should pay interest at the legal rate of five per cent (5%) therefor, from the receipt of each sum after the pay-

ment of the debt was received, less of course any and all payments and credits passed to the account of the 'Old Bank and its receipt as of the dates thereof.

■ With respect to costs, those of the first appeal fell upon the plaintiff and intervenors, as appellees under the decision which set aside the judgment of this court. The Court of Appeals has itself directed how costs of the second trial or retrial in this court and of the last appeal should be apportioned. This leaves those of the first trial in this court, and in the absence of some reason in equity or otherwise to control, costs generally follow the final judgment in favor of the prevailing party. Plaintiff's recovery of a substantial judgment carries with it the costs of the first trial in this court. Federal Rules of Civil Procedure, Rule 54(d), 28 U.S.C.A.; Louisiana Code of Practice, art. 549; 20 Corpus Juris Secundum, Costs, § 1, page 257.