# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #017

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2017**, are as follows:

**PER CURIAMS:**

2016-C-1028        GERALD CASTILLE v. ST. MARTIN PARISH SCHOOL BOARD (Parish of St. Martin)

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it renders judgment in favor of Gerald Castille against the St. Martin Parish School Board in the additional amount of $75,000. In all other respects, the judgment of the court of appeal is affirmed.

JOHNSON, C.J., dissents in part and assigns reasons.
HUGHES, J., dissents for the reasons assigned by Johnson, C.J.
GENOVESE, J., dissents.

SUPREME COURT OF LOUISIANA

No. 2016-C-1028

GERALD CASTILLE

VERSUS

ST. MARTIN PARISH SCHOOL BOARD

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. MARTIN

PER CURIAM

We granted certiorari in this matter to consider whether the court of appeal erred in awarding plaintiff damages for bad faith breach of contract. For the reasons that follow, we find the court of appeal erred in awarding bad faith damages and therefore reverse this portion of the court of appeal's judgment.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Gerald Castille, was employed as a school bus driver for the St. Martin Parish School Board ("School Board") beginning in 1977. During his first few years, plaintiff drove two bus routes known as the "Levee Route" and the "Portage Route." According to plaintiff, these routes were undesirable as they "required the assigned bus driver to travel very long distances while trying to maintain a safe and orderly bus populated with children from families that were known to have little or no respect for the bus operators. . . ."

In 1980, plaintiff was assigned to the "Highway 31 Route." Although this route was initially considered undesirable, plaintiff asserts it changed over time and became more desirable as the route became less populated. While driving that route for nearly thirty years, plaintiff claimed to have developed relationships with the

students and their parents, noting the route gave him "a sense of purpose and dignity." In the spring of 2008, the costs of diesel fuel began to rise, and the School Board was forced to take steps to save money by redrawing and reassigning bus routes. The School Board set up a transportation committee made up of volunteer bus drivers. This committee was charged with redrawing the bus routes to cut down on "dead miles"[1] and fuel costs. During the reconfiguration period, the School Board gave bus drivers the opportunity to provide input at meetings, but plaintiff never attended a meeting.

The School Board's transportation committee reconfigured the existing routes and assigned them to bus drivers based on the route that was closest to each driver's home. Driver seniority was not considered in assigning routes.

Prior to the start of the 2008-2009 school year, the bus drivers received their new route assignments. The School Board assigned plaintiff a combined "Levee-Portage Route," two of his old routes, with no change in his salary, health benefits, or retirement.[2] Plaintiff objected to this new route, but claims the bus manager told him to try the route for a few weeks and come back if he was still unhappy because the routes were "not set in stone" and adjustments could be made. After two weeks, plaintiff requested to be returned to the Highway 31 route, but was told to deal with the current situation.

Plaintiff gave the new route "a shot," but found it to be as bad as it was thirty years ago, with overcrowded buses and disciplinary problems among the children.

---

[1] The School Board's bus supervisor, Hebert Thibodeaux, later testified that "dead miles" are the distance a bus driver travels between his last passenger drop off and the location where the driver parks his or her bus. In other words, these were the miles a bus driver drives without a child on the bus.

[2] Plaintiff admitted he was paid for a five-hour work day on the newly-assigned route, but only worked three hours.

He alerted his supervisors to the problems, but claim they took no action. According to plaintiff, he began experiencing anxiety and depression problems during this time.[3] His problems continued until 2011, when a more desirable vacant route became available.

Plaintiff filed the instant suit against the School Board. In his petition, plaintiff alleged the School Board violated La. R.S. 17:493.1[4] in assigning the bus routes in 2008. Among other causes of action,[5] the petition alleged the School Board's actions "were done in bad faith and constitute breaches of Defendant's implied duty to perform their contractual obligations in good faith." Plaintiff also alleged detrimental reliance, based on alleged assurances by his supervisors that the route would be changed if he did not like it, and sought non-pecuniary damages.

The case proceeded to a bench trial. At the conclusion of trial, the district court concluded the School Board violated La. R.S.17:493.1. The district court

---

[3] Plaintiff first began to experience panic attacks in 1987, while driving the Highway 31 Route. He was diagnosed as suffering from anxiety and depression. Plaintiff underwent medical treatment and claims his condition did not affect his work in any way until his route was changed.

[4] La. R.S. 17:493.1 provides, in pertinent part:

> A. (1)(a) Whenever a school bus operator is needed to drive a new route or a route vacated by a previous operator, the school bus operator who is tenured and has acquired the greatest seniority shall be offered the opportunity to and may change from driving his route to the vacant route before another operator is selected.
>
> (b) If the tenured bus operator with the greatest seniority chooses not to change to the vacant route, the route shall then be offered in order of seniority to a school bus operator who has acquired tenure.
>
> (c) If no tenured operator chooses to change to the vacant route, the route shall then be offered to a full-time probationary bus operator.
>
> (d) If no regular bus operator, tenured or probationary, chooses to change to the vacant route, then a substitute bus operator shall be selected for the position from a list of approved substitute school bus operators.

[5] Plaintiff also alleged a cause of action in tort. Prior to trial, the School Board filed an exception of prescription as to plaintiff's tort claims. The district court maintained this exception, and this judgment is now final.

dismissed plaintiff's contract, detrimental reliance, and non-pecuniary damage claims, reasoning plaintiff's exclusive remedy for any work-related injury was grounded in workers' compensation. However, the district court awarded plaintiff damages in the form of "full pay for any loss of salary or time sustained by reason of the action of the [School Board] in violation of La. R.S. 17:493.1," as well as reimbursement "for any increase in non passenger miles per day per year from 2008 to 2011 attributable to the consolidated or reassigned route in 2008 over the previous route. . . ."

Plaintiff appealed. The court of appeal affirmed in part and reversed in part. *Castille v. St. Martin Parish School Bd.*, 15-997 (La. App. 3 Cir. 4/27/16), 190 So. 3d 1225.

In its opinion, the court of appeal found the district court committed legal error in rejecting plaintiff's contractual claims. The court of appeal reasoned that under the jurisprudence, the relationship between the School Board and a tenured employee such as plaintiff was a contractual relationship. It determined the district court's finding that the School Board violated plaintiff's tenure rights under La. R.S. 17:493.1 was inconsistent with the district court's rejection of plaintiff's contractual claims. Accordingly, the court of appeal turned to a de novo review of the record.

Based on its de novo review, the court of appeal determined the School Board breached its contract with plaintiff by assigning the new routes without regard to plaintiff's seniority. The court also found plaintiff had a claim for detrimental reliance based on the School Board's failure to adjust the routes despite assurances the new routes were "not set in stone."

In reviewing damages, the court of appeal found the district court erred in concluding plaintiff's exclusive remedy for any work-related injury was in workers' compensation. The court of appeal reasoned that while plaintiff's tort damages

(which had already been held to be prescribed) were barred by the exclusivity provision of the workers' compensation law, his contractual and detrimental reliance claims were outside of the scope of workers' compensation. Therefore, finding legal error in the district court's conclusions, the court of appeal turned to a de novo review of damages.

The court of appeal rejected plaintiff's claim for non-pecuniary damages, finding the employer-employee contract between the School board and plaintiff was not intended to gratify a non-pecuniary interest for purposes of La. Civ. Code art. 1998. However, the court of appeal determined the School Board's breach of the contract was in bad faith and it was therefore liable for all damages, foreseeable or not, that are a direct consequence of its failure to perform pursuant to La. Civ. Code art. 1997. Accordingly, the court found the School Board was liable to plaintiff for the acceleration of his episodes of anxiety and depression caused by its actions. The court set the amount of this damage at $75,000.

Upon the School Board's application, we granted certiorari. The primary issue which prompted our grant of certiorari was the court of appeal's determination that the School Board acted in bad faith in failing to give effect to plaintiff's seniority rights.

## DISCUSSION

Plaintiff's action is premised on the School Board's violation of his rights under La. R.S. 17:493.1, which provides, in pertinent part:

> A. (1)(a) Whenever a school bus operator is needed to drive a new route or a route vacated by a previous operator, the school bus operator **who is tenured and has acquired the greatest seniority** shall be offered the opportunity to and may change from driving his route to the vacant route before another operator is selected. [emphasis added].

5

Nothing in this statute expressly states a cause of action for violation of a driver's tenure rights. However, the jurisprudence has recognized tenure laws are read into and form a part of the tenured employee's contract with his or her employer. For example, in *Pizzolato v. State through Bd. of Elementary and Secondary Educ.*, 452 So.2d 264, 268 (La. App. 1 Cir.1984), the court of appeal explained the provisions of teacher tenure laws are read into employment contracts:

> Secondly, **the provisions of the Teacher Tenure Law are read into any such contracts and form a part thereof**. *See State ex rel. Nobles v. Bienville Parish School Board*, 198 La. 688, 4 So.2d 649 (1941). To hold that the defendant could escape the provisions of the Tenure Law by contracting for a reduction in compensation at a future time would render the Teacher Tenure Law meaningless and permit the demotion of teachers in derogation of the provisions of that statute.

In the instant case, it is undisputed plaintiff had attained a tenured position. Additionally, the evidence clearly indicates the School Board did not take plaintiff's seniority into account when it reassigned the bus routes. Therefore, we agree with the court of appeal that the School Board breached its implied contractual obligations.

We now turn to consideration of whether the School Board's breach was in bad faith, thereby making it liable "for all the damages, foreseeable or not, that are a direct consequence of [its] failure to perform." La. Civ. Code art. 1997.

Official revision comment (b) to La. Civ. Code art. 1997 indicates "[a]n obligor is in bad faith if he intentionally and maliciously fails to perform his obligations." The jurisprudence has consistently held that bad faith as used in the context of La. Civ. Code art. 1997 "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties."

*Dorsett v. Johnson*, 34,500 at p. 5 (La. App. 2 Cir. 5/9/01), 786 So.2d 897, *writ*

*denied*, 01-1706 (La. 9/28/01), 798 So.2d 115. *See also Delaney v. Whitney Nat'l Bank*, 96-2144 (La. App. 4th Cir.11/12/97), 703 So. 2d 709, *writ denied*, 98-0123 (La.3/20/98), 715 So.2d 1211; *Adams v. First Nat'l Bank of Commerce*, 93-2346, 94-0486 (La.App. 4 Cir. 9/29/94), 644 So.2d 219, *writ denied*, 94-3053 (La.2/3/95), 649 So.2d 411.

Courts have recognized bad faith is "more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Benton v. Clay*, 48,245 at p. 8 (La. App. 2 Cir. 8/7/13), 123 So. 3d 212, 219. *See also Bond v. Broadway*, 607 So. 2d 865 (La. App. 2d Cir.1992), *writ denied*, 612 So.2d 88 (La.1993); *Weysham v. Harney*, 518 So. 2d 1059 (La.App. 4th Cir.1987), *writ denied,* 521 So.2d 1172 (La.1988).

In the instant case, the motivating factor advanced by the School Board for changing the routes was the increased cost of diesel fuel. Herbert Thibodeaux, the bus manager for the School Board, testified he was asked to formulate a plan to reduce the costs of fuel. To do so, he tried to reduce "dead miles," which are the distance a bus driver travels between his last passenger drop off and the location where the driver parks his or her bus. He testified that in making the new assignments, he did not take the driver's seniority into account, explaining seniority would only be considered if it was "feasible." Mr. Thibodeaux's testimony was generally supported by Ann Thomassee, another bus driver and a member of the committee that redrew the routes. Both Mr. Thibodeaux and Ms. Thomassee indicated plaintiff was invited to participate in the process of redrawing the routes, but declined to do so.

This evidence indicates the School Board's decision to redraw the routes was based on the legitimate goal of saving money on fuel costs by making the bus routes more efficient. While it might be debated whether the School Board actually

7

achieved this objective, we conclude the evidence establishes the School Board's decision to ignore drivers' seniority in assigning routes was at most a product of negligence or bad judgment. Nothing in the record indicates the School Board's decision arose from conscious desire to cause harm to plaintiff, nor was it based on any dishonest or morally questionable motives.

Because we find the School Board did not breach its contract with plaintiff in bad faith, there is no basis for court of appeal's award of contractual damages of $75,000 to plaintiff for the acceleration of his episodes of anxiety and depression. Accordingly, this portion of the court of appeal's judgment must be reversed.

## DECREE

For the reasons assigned, the judgment of the court of appeal is reversed insofar as it renders judgment in favor of Gerald Castille against the St. Martin Parish School Board in the additional amount of $75,000. In all other respects, the judgment of the court of appeal is affirmed.

8

SUPREME COURT OF LOUISIANA

No. 2016-C-1028

GERALD CASTILLE

VERSUS

ST. MARTIN PARISH SCHOOL BOARD

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. MARTIN

**JOHNSON, Chief Justice, dissents in part and assigns reasons.**

I respectfully dissent from the majority's decision to reverse the award of damages to Mr. Castille. While the majority correctly determines that the School Board breached its contractual obligations to Mr. Castille, the majority errs in finding this breach was not in bad faith.

La. R.S. 17:493.1 provides that "whenever a school bus operator is needed to drive a new route or a route vacated by a previous operator, **the school bus operator who is tenured and has acquired the greatest seniority <u>shall</u> be offered the opportunity to and may change from driving his route to the vacant route before another operator is selected**." Despite this mandatory provision, the School Board made a purposeful decision not to take driver's seniority into account, unless it was "feasible." The majority find this decision was "at most a product of negligence or bad judgment," noting the School Board's decision to redraw the routes was "based on the legitimate goal of saving money on fuel costs by making the bus routes more efficient." However, in my view, the clear language of this statute does not allow for noncompliance simply because that noncompliance is based an alleged noble purpose, such as saving money. As aptly noted by the court of appeal:

> The School Board rejected Mr. Castille's tenure and seniority rights in the face of statutory authority, its own local rules, and its well-

established School Board policy. In fact, after its venture into ignoring school bus drivers' tenure and seniority rights in assigning routes, the School Board reverted to its previous policy of filling vacant and new routes pursuant to tenure and seniority. When Mr. Castille attempted to exert his rights, he was told to cease complaining or face disciplinary action. Despite all of the professed good reasoning for taking this action, it was not an honest mistake. It was a specific refusal by the School Board to fulfill its contractual obligations. If one were to consider the fact that ignoring tenure and seniority rights allowed the Transportation Committee to favor a less-senior driver over a more-senior driver by the simple act of placing the route's beginning point closer to the less-senior driver's home, its action in that regard constituted a nonfulfillment of an obligation for sinister or morally-questionable motives. To reach any other conclusion would render the school bus drivers' tenure and seniority rights of no moment. A school board could act toward a tenured employee in any way it wished, and the only penalty would be the payment of salary and benefits. If the tenured employee was to continue working, as most would have to do, a school board would be able to violate the law with impunity. This case is a prime example of that very situation.

*Castille v. St. Martin Parish School Bd.*, 15-997 (La. App. 3 Cir. 4/27/16), 190 So. 3d 1225 1238-39.

It is undisputed that Mr. Castille had attained a tenured position and the School Board did not take his seniority into account when it reassigned the bus routes, despite the mandate of the statute. Further, it is undisputed the School purposefully chose to ignore the statute for the stated purpose of saving money on diesel fuel. I agree with the court of appeal that the School Board's action in breaching its contractual obligation was not simply an honest mistake. The School Board intentionally and willfully rejected the requirement imposed by the statute. Thus, I find the School Board's intentional and deliberate breach of contract to be in bad faith. For these reasons, I would affirm the court of appeal's award of $75,000 in damages to Mr. Castille for breach of contract.

2

**SUPREME COURT OF LOUISIANA**

**No. 2016-C-1028**

**GERALD CASTILLE**

**VERSUS**

**ST. MARTIN PARISH SCHOOL BOARD**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
THIRD CIRCUIT, PARISH OF ST. MARTIN**

Hughes, J., dissents for the reasons assigned by Johnson, C.J.