NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-428

PAT COOPER

VERSUS

LAFAYETTE PARISH SCHOOL BOARD

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20145941
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Sharon Darville Wilson, Judges.

AFFIRMED; REMANDED WITH INSTRUCTIONS.

**Thear J. Lemoine**
**Timothy T. Roniger**
**Stephanie D. Veech**
**Brown Sims, P.C.**
**1100 Poydras St. – 39th Floor**
**New Orleans, LA 70163**
**(504) 569-1007**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
    **Pat Cooper**

**Shelton Dennis Blunt**
**Paul LeBlanc**
**Monica Vela-Vick**
**Phelps Dunbar, LLP**
**Post Office Box 4412**
**Baton Rouge, LA 70821-4412**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Lafayette Parish School Board**

**PICKETT, Judge.**

A former school board superintendent appeals a judgment denying his claims for damages caused by the defendant's bad-faith termination of his employment contract, attorney fees, legal interest, and recovery of wages as a tenured teacher. For the following reasons, we affirm the trial court's judgment and remand to the trial court with instructions.

## FACTS

In *Cooper v. Lafayette Parish School Board*, 16-169, p. 1 (La.App. 3 Cir. 5/10/17), 219 So.3d 1275, 1277, *writ denied,* 17-968 (La. 10/27/17), 228 So.3d 1223, another panel of this court granted a rehearing to reconsider the merits of a prior appeal in which it outlined the origin of the claims at issue herein:

> Dr. Pat Cooper was hired by the Lafayette Parish School Board (Board) to a three-year term as superintendent of the Lafayette Parish School System (School System), pursuant to a January 1, 2012 written contract. Dr. Cooper, who has a Ph.D. in Education and previous experience as a superintendent in both Louisiana and Mississippi, was hired based on a five-to-four vote of the Board and experienced difficulties with the Board from the outset. In addition to the already strained relations between them, the Louisiana Legislature passed 2012 La. Acts No. 1[1] (hereinafter Act 1), which totally changed the relationship between school boards and superintendents of schools in the state. By the middle of 2014, the Board, who had engaged outside counsel, authorized an investigation into actions taken by Dr. Cooper, which resulted in formal disciplinary charges being levied against him.

The Board asserted charges for "Unworthiness, Inefficiency, Breach of Contract, Failure to Comply with Board Policy and State Law" with regard to Dr. Cooper's actions in five different situations. After a hearing, the Board determined by a vote of seven to two that Dr. Cooper was guilty on four of the five charges and terminated his employment as of November 6, 2014. Dr. Cooper appealed the

---

[1] 2012 La. Acts No. 1 became effective on July 1, 2012.

Board's action to the Fifteenth Judicial District Court. After review, the trial court rejected three of the four guilty charges and affirmed the fourth charge. Dr. Cooper appealed the trial court's affirmance of the fourth charge levied against him. The Board answered the appeal, asserting the trial court erred in rejecting three of the four charges against Dr. Cooper. On rehearing, another panel of this court reversed the trial court's judgment affirming the Board's termination of Dr. Cooper on the Board's fourth charge and rendered judgment in Dr. Cooper's favor on that charge. The panel also affirmed the trial court's rejection of the other three charges that served as the basis for Dr. Cooper's termination and remanded the matter for a trial to determine the damages Dr. Cooper sustained by the Board's wrongful termination.

On remand, Dr. Cooper filed a memorandum outlining the damages he sought to recover from the Board. The damages he sought included a claim for damages caused by the Board's bad-faith breach of his employment contract. The Board filed exceptions of no cause of action and res judicata with regard to Dr. Cooper's claims of its alleged bad faith. After the trial court sustained the Board's exceptions, Dr. Cooper filed an application for supervisory writs, which this court granted. The panel determined Dr. Cooper had sufficiently pled facts of bad faith by the Board and reversed the trial court's denial of that claim. *See Cooper v. Lafayette Par. Sch. Bd.*, 18-476 (La.App. 3 Cir. 9/17/18) (unpublished writ opinion). The trial court conducted a trial on Dr. Cooper's claims in July 2020. When Dr. Cooper rested his case, the Board urged a motion for involuntary dismissal. After considering the merits of the motion, the trial court denied Dr. Cooper's claim for bad-faith damages and his claim that he is entitled to the protections afforded a tenured teacher under Louisiana's Teacher Tenure Law,

2

La.R.S. 41:441-445. The trial resumed, and upon its conclusion, the trial court awarded Dr. Cooper damages for unpaid benefits provided by his employment contract, a penalty for unpaid wages, attorney fees, legal interest, and all costs.

## ASSIGNMENTS OF ERROR

Dr. Cooper assigns four errors with the trial court's judgment which present the following issues for our review:

(1) Did the trial court err in granting the Board's motion for involuntary dismissal of Dr. Cooper's claims for damages caused by the Board's bad faith breach of his employment contract?

(2) Did the trial court err in denying Dr. Cooper's claim for the attorney fees he incurred asserting damages claims under Civil Code articles 1997 and 1998, when the Board was contractually obligated to indemnify him for the fees related to this dispute without regard to whether he was successful with these claims?

(3) Did the trial court err by not awarding Dr. Cooper judicial interest on the amounts owed under his employment contract from the date of judicial demand?

(4) Did the trial court err by failing to adhere to this Court's decision in *McGraw v. Iberia Parish School Board*, 310 So.2d 139 (La.App. 3 Cir)[, *writ denied*, 313 So.2d 827 (La.1975)] and treat Dr. Cooper as a teacher for purposes of Louisiana's teacher tenure law?

(5) Should this Court conduct a de novo review to address all these errors?

In its answer to Dr. Cooper's appeal, the Board assigns three errors with the trial court's judgment which present the following issues for our review:

(1) Whether the law of the case doctrine applies to bar reconsideration of this Court's treatment of the attorney fee provisions in Cooper's Employment Contract in *Cooper* II?

(2) Whether the plain language of Cooper's employment contract authorizes an award of attorney fees to Cooper in this case?

(3) Whether Cooper's employment contract was subject to the protections of Louisiana's unpaid wages law (La.R.S. 23:631 et seq.)?

3

(4) Whether Cooper should be awarded all of his costs, even though he did not prevail on most of his theories of recovery and received a damages award that was less than was prayed for?

## DISCUSSION

*Standard of Review*

Dr. Cooper asserts that the trial court committed legal errors which require this court to conduct a de novo review. The Board counters that some of Dr. Cooper's assigned errors involve factual determinations (those dealing with attorney fees and judicial interest), made after a full trial on the merits; therefore, the alleged factual errors are reviewed for manifest error, and legal conclusions are reviewed de novo. The Board further asserts that the trial court's statutory and contractual interpretations are subject to de novo review because they involve questions of law, citing *Broussard v. Lafayette Parish School Bd.*, 08-666 (La.App. 3 Cir. 12/10/08), 998 So.2d 1253, and *Johnston v. Vincent*, 19-55 (La.App. 3 Cir. 5/20/20), 317 So.3d 623.

We agree with the Board and will apply the appropriate standard of review depending on the issues presented by each assigned error.

*Bad-Faith Breach of Contract*

In his first assignment of error, Dr. Cooper asserts the trial court erred in granting the Board's motion for involuntary dismissal of his bad-faith breach of contract claims. Dr. Cooper seeks to recover damages under La.Civ.Code arts. 1997 and 1998, asserting the Board acted in bad faith when it breached his employment contract making it liable to him "for all the damages, foreseeable or not, that are a direct consequence of [its] failure to perform, that are a direct consequence of [its] failure to perform." La.Civ.Code art. 1997. Official revision comment (b) to Article 1997 states "[a]n obligor is in bad faith if he intentionally

4

and maliciously fails to perform his obligations." Louisiana Civil Code Article 1998 provides:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.

> Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

In his writ application seeking reversal of the trial court's grant of an exception of no cause of action filed by the Board with regard to this claim, Dr. Cooper argued his allegation that "he was not properly terminated for cause and, in fact, was terminated in an arbitrary and capricious fashion for political reasons and reasons of vindictiveness" stated a right or cause of action for bad faith. As noted above, this court granted the writ application and remanded the matter for trial. *Cooper*, 18-476 (La.App. 3 Cir. 9/17/18) (unpublished writ ruling).

On remand, after Dr. Cooper rested his case, the Board urged a motion for involuntary dismissal, seeking to have his claims for bad faith breach of contract dismissed. After considering the parties' arguments and Dr. Cooper's evidence on that issue, the trial court concluded Dr. Cooper failed to prove the Board acted in bad faith when it terminated his contract. He now urges the trial court erred in reaching this conclusion.

Louisiana Code of Civil Procedure Article 1672(B) states:

> In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment

5

against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

When considering a motion for involuntary dismissal, the trial court must consider and weigh the plaintiff's evidence and dismiss the matter if it concludes the plaintiff has not met his burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir. 10/1/03), 856 So.2d 1271. The grant of a motion for involuntary dismissal is reviewed under the manifest error standard of review. *Bonnet v. Lafayette Par. Sheriff's Off.*, 11-676 (La.App. 3 Cir. 11/9/11), 80 So.3d 32. Accordingly, to reverse the trial court's grant of involuntary dismissal, a reviewing court must conduct a thorough review of the record and find that no factual basis exists for the trial court's finding or that the finding is clearly wrong or manifestly erroneous. *Gauthier v. City of New Iberia*, 06-341 (La.App. 3 Cir. 9/27/06), 940 So.2d 915. The issue is not whether the trial court was right or wrong, but whether its conclusion was reasonable. *Fla. Gas Transmission Co., LLC v. Texas Brine Co., LLC*, 18-907 (La.App. 1 Cir. 8/29/19), 282 So.3d 256, *writ denied,* 19-1538 (La. 11/19/19), 282 So.3d 1066.

Our supreme court considered the concept of bad-faith breach of contract in *Castille v. St. Martin Parish School Board*, 16-1028, pp. 6-7 (La. 3/15/17), 218 So.3d 52, 56, (unquoted citations omitted), where it explained:

> The jurisprudence has consistently held that bad faith as used in the context of La.Civ.Code art. 1997 "generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties." *Dorsett v. Johnson*, 34,500 at p. 5 (La.App. 2 Cir. 5/9/01), 786 So.2d 897, *writ denied*, 01-1706 (La. 9/28/01), 798 So.2d 115.
>
> Courts have recognized bad faith is "more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Benton v. Clay*, 48,245 at p. 8 (La. App. 2 Cir. 8/7/13), 123 So.3d 212, 219.

6

"When intent is disputed in a civil or criminal action, proof of intent or state of mind is rarely established as a fact by direct evidence, but may be inferred from the facts regarding the individual's actions or other circumstances." *S.G. v. City of Monroe*, 37,103, p. 8 (La.App. 2 Cir. 4/11/03), 843 So.2d 657, 662.

Dr. Cooper presented only his testimony to substantiate his bad faith breach of contract claim. Dr. Cooper outlined what actions by the Board showed its bad faith, noting that circumstantial evidence is often required to prove bad faith. His testimony established he had the unpleasant task of stopping improper activities that had previously been engaged in or condoned by at least two school board members. As a result, one of the board members told Dr. Cooper he would no longer support him and threatened to tell other board members he had improperly hired a maintenance supervisor. The hiring of that supervisor was one of the charges the Board assigned for Dr. Cooper's termination. Lastly, Dr. Cooper points to the Board's dismissal of its legal counsel who opined that he had not violated the law or the terms of his contract as evidence of the Board's bad faith. He contends the trial court erred in concluding his evidence was insufficient to carry his burden of proof.

When ruling on the motion for involuntary dismissal, the trial court stated oral reasons for its findings. Upon counsel's request for written reasons after the conclusion of the trial, the trial court issued the following reasons with regard to its grant of the motion for involuntary dismissal:

> On the issue of bad faith breach of contract, the Court held that Dr. Cooper had failed to carry his burden of proof that the School Board was in bad faith in terminating his contract. Bad faith cannot be presumed and must be proven by a preponderance of the evidence. Dr. Cooper cited three incidents in support of the claim of bad faith–a disagreement with a school board member over the firing of an employee, a disagreement with another school board member over use

of a master key and the actions of the School Board in proceeding to conduct an investigation of him despite the conclusion of Roger Hamilton, the board legal advisor, that an investigation was not warranted.

The Court examined these incidents in light of the entire record in this case. The record includes minutes of school board meeting[s] leading up to the decision to hire legal counsel to conduct an investigation and the decision to conduct a termination hearing. Other board attorneys besides Mr. Hamilton were present at those meetings. It appears that the school board obtained the appropriate approval to hire counsel to conduct an investigation into the superintendent. See LSA-R.S. 42:263. While a 2/3 majority (7 members) of the board eventually voted to terminate Dr. Cooper, the vote to dismiss the D.A. as counsel and the vote to accept charges against Dr. Cooper were by a vote of 6 members. The record also consists of the transcripts of the termination hearing on November 5-6, 2014, a prior hearing on [an] injunction in another case in [an] attempt to disqualify certain board members from participating in the termination hearing and the first trial of this case conducted before another judge on September 21-22, 2015. While those transcripts reveal instances of disputes and some animosity between Dr. Cooper and some board members, none of it rises to the level of bad faith. The term bad faith means more than mere bad judgment or negligence and it implies the conscious doing of a wrong for dishonest or morally questionable motives. *The decision to terminate Dr. Cooper was based upon legal conclusions of the School Board as to their authority versus that of the superintendent. Those conclusions were ultimately, on a rehearing before the Third Circuit, held to be incorrect. Yet the first judge assigned to this case and the first panel of the Third Circuit reached some of the same legal conclusions as the school board.*

Dr. Cooper failed to carry his burden of proof that the actions of the school board were based on conscious wrong-doing for a dishonest or morally questionable motive or based upon a motive of ill will. Therefore, the School Board was granted an Involuntary Dismissal of that claim.

We have reviewed the record and find a reasonable factual and legal basis exists for the trial court's conclusion that Dr. Cooper did not prove the Board acted in bad faith when it terminated his contract. In essence, he contends the two board members with whom he had butted heads turned the rest of the board members against him. There is simply no evidence of this. Having been hired by a vote of 5-4, Dr. Cooper likely had little room for error from the beginning of his

8

employment. The evidence shows there were conflicts between Dr. Cooper and board members in more than one respect. Moreover, the implementation of Act 1 in July 2012 resulted in great changes in the roles of school boards and superintendents that exacerbated that situation.

Dr. Cooper's claim to recover nonpecuniary damages contemplated by La.Civ.Code art. 1998 fails for another reason. To recover nonpecuniary damages under Article 1998, a plaintiff must prove more than bad faith:

> [T]he obligee must intend "to gratify a significant nonpecuniary interest by way of the contract," and *the obligor must or should know that failure to perform would cause nonpecuniary loss*. Regardless of whether plaintiff has or has not proven that he intended to gratify a significant nonpecuniary interest, he presented no evidence that the *[obligor] knew or should have known that his failure to perform would cause nonpecuniary loss*. Further, there was no evidence presented that the [obligor] "intended, through his failure, to aggrieve the feelings of the obligee" as required by La. C.C. art. 1998.

*Sher v. Lafayette Ins. Co.*, 07-2441, 07-2443, p. 20 (La. 4/8/08), 988 So.2d 186, 202-03 (emphasis added) (quoting *Aucoin v. S. Quality Homes,* 07-1014, pp. 16-17 (La. 2/26/08), 984 So.2d 685, 696-97). Dr. Cooper testified the Board's actions caused him to be humiliated, depressed, withdrawn, avoided by his professional colleagues, and unable to procure new employment. He did not, however, provide any evidence that the Board knew or should have known its alleged bad faith termination of him would cause him nonpecuniary loss or that the Board intended to aggrieve his feelings. Accordingly, the trial court did not err in rejecting Dr. Cooper's claim for damages under La.Civ.Code arts. 1997-1998.

*Attorney Fees*

Dr. Cooper next assigns error with the trial court's failure to award him the attorney fees he incurred to litigate his unsuccessful claims for bad-faith damages against the Board. He argues Section 9(B) of the attorney fee provision of his

9

employment contract requires only that there be a conflict in the parties' legal positions for it to apply. The Board counters the trial court erred in awarding Dr. Cooper any attorney fees. The Board acknowledges this court has already considered and rejected its argument that Section 9(B) of the employment contract does not apply to Dr. Cooper's claims but urges this court to reconsider and reverse its earlier holding.

Section 9 of Dr. Cooper's contract, entitled "PROFESSIONAL LIABILITY," provided:

A. BOARD agrees that it shall defend, hold harmless and indemnify SUPERINTENDENT from any and all demands, claims, suits, actions and legal proceedings brought against SUPERINTENDENT in his individual capacity, or in his official capacity as agent and employee of the BOARD, provided the incident arose while the SUPERINTENDENT was acting within the scope of his employment and excluding criminal litigation and as such liability coverage is within the authority of the school BOARD [sic] to provide under state law. . . .

B. If, in the good faith opinion of SUPERINTENDENT, conflict exists as regards the defense to such a claim between the legal position of SUPERINTENDENT and the legal position of District, the SUPERINTENDENT may engage counsel in which event BOARD shall indemnify the SUPERINTENDENT for the costs of legal defense as permitted by state law.

C. BOARD shall not, however, be required to pay any costs of any legal proceedings in the event BOARD and SUPERINTENDENT have adverse interests in such litigation, except as stated above.

The trial court acknowledged the prior trial judge concluded that Dr. Cooper's contract obligated the Board to pay his attorney fees and applied the law of the case doctrine to attorney fees Dr. Cooper incurred in defending himself in the Board's termination proceedings and recovering amounts owed to him under his contract. The trial court refused, however, to award attorney fees he incurred in pursuing other theories of recovery against the Board, explaining:

[T]his Court must award attorney fees incurred, outside of the school board hearing, in defending against his termination. The Court will award only fees which were incurred in defending the contract termination and not fees incurred in pursuing other theories of recovery against the school board. The above decisions of the prior judge and the Third Circuit rely on Section 9B of the contract as affording Dr. Cooper indemnification of attorney fees. That section deals only with conflict existing as to defense of a claim. The contract does not provide for any other recovery of attorney fees.

In *Arceneaux v. Amstar Corp.*, 10-2329, p. 14 (La. 7/1/11), 66 So.3d 438, 448, the supreme court explained the law of the case doctrine, stating:

> The law of the case refers to a policy by which the court will not reconsider prior rulings in the same case. *Day v. Campbell–Grosjean Roofing & Sheet Metal Corp.,* 260 La. 325, 256 So.2d 105 (1971).
>
>> The law of the case principle relates to (a) the binding force of trial court rulings during later stages of the trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal. Among reasons assigned for application of the policy are: the avoidance of indefinite relitigation of the same issue; the desirability of consistency of the result in the same litigation; and the efficiency, and the essential fairness to both sides, of affording a single opportunity for the argument and decision of the matter at issue.
>
> *Petition of Sewerage and Water Bd. of New Orleans,* 278 So.2d 81, 84 (La.1973). However, even when applicable, the law of the case is discretionary and should not be applied in cases of palpable error or where application would result in injustice. *Id.*

As the trial court noted, Section 9(B) (emphasis added) states, in pertinent part: "If . . . conflict exists as regards the **defense** to such a claim between the legal position of SUPERINTENDENT and the legal position of District, the SUPERINTENDENT may engage counsel[,]" and the Board will indemnify him for those fees. In pursuing his damage claims for the Board's alleged bad faith, Dr. Cooper was not defending himself against an action by the Board. Moreover, he

11

was unsuccessful on that claim; therefore, we find no error with the trial court's conclusion.

We have considered the Board's arguments that the original trial court and prior appeal panel erred in their interpretation of Section 9(B) of Dr. Cooper's contract in light of this court's earlier affirmance of the trial court's conclusion and the supreme court's refusal to grant writs therein. In the prior appeal, this court conducted a thorough review of the parties' arguments, the contract provisions at issue, the law governing contract interpretation, and the trial court's ruling. On review, we find no error with the conclusion therein. Moreover, we have reviewed and considered Section 9 and find no palpable error in the conclusion that Dr. Cooper is entitled to recover attorney fees associated with his defense against the Board's termination of his contract, including the recovery of sums owed him under his contract and under the law, as a result of the termination proceeding. Accordingly, we apply the law of the case doctrine to the attorney fees Dr. Cooper incurred, except those attorney fees incurred in the pursuit of his claim for bad faith damages.

### *Tenure*

Dr. Cooper asserts the trial court erred in rejecting his claim that he should be treated as a tenured teacher with regard his bad faith termination claims. The trial court determined a superintendent cannot be a tenured teacher as contemplated by Louisiana's teacher tenure laws set forth in La.R.S. 17:441-445 and rejected Dr. Cooper's claim.

Dr. Cooper cites *McGraw,* 310 So.2d 139, in support of his argument. In *McGraw*, an assistant superintendent was held to be entitled to tenure. Dr. Cooper has not cited a case in which a superintendent has been held to be entitled to

tenure. The only other case in which a superintendent argued he was a tenured teacher, *Milstead v. Jackson Parish School Board*, 31,804 (La.App. 2 Cir. 12/11/98), 726 So.2d 979, *writ denied,* 99-447 (La. 4/1/99), 742 So.2d 557, denied the principal's claim.

The court in *Milstead*, 726 So.2d at 983-84 (citations omitted) (footnote omitted), explained:

> [There are] two distinct areas of our law—the law dealing with the office of superintendent of schools and the teacher tenure law for contract administrative employees of a school board—there is an obvious conflict with any attempt to apply both sections of the law to this dispute. While a superintendent, as chief administrative officer, must be the choice of each elected school board to carry out the board's policies and attitudes determined through a political process, a superintendent, as a tenured contract employee, would seek to escape from the "vicissitudes of politics or the likes or dislikes of those charged with the administration of school affairs."

> Apart from this broad policy conflict, the two bodies of law conflict in specific details. The law for superintendents . . . allows a school board to elect a superintendent for any term the board might choose up to four years. [La.R.S. 17:444(B)(4)] concerns contracts with employees for no less than two nor more than four years. . . . The law for superintendents clearly indicates that one school board cannot elect a superintendent for a term that would extend significantly into the term of the next elected school board. [La.R.S. 17:444(B)] would allow one school board to fix within a superintendent's contract, performance criterion and objectives, which could be routinely achieved by the superintendent so as to extend his contract indefinitely despite the election of new school board members with different objectives. Finally, while [La.R.S. 17:444(B)] specifically sets forth that the superintendent shall conduct the employee performance evaluations, the statute does not address who conducts such evaluation of the superintendent. This is another indication that the legislature did not have the superintendent's job in mind in enacting [La.R.S. 17:444(B)].

> In this context of statutory construction, with conflict between the statutes, the laws specifically directed at the office of the superintendent must prevail over the more general statute dealing with tenure for employees under contract with a school board. Moreover, with a specific constitutional provision addressing the election of superintendent of schools, the legislature is presumed to have enacted [La.R.S. 17:444(B)] with deliberation and with full knowledge of the

existing constitutional provision and laws on the same subject matter. The construction urged for [La.R.S. 17:444(B)], which would allow an existing school board to thwart the constitutional right of the next elected school board to elect a superintendent of its choosing, does not exhibit the legislative purpose for the law. We therefore agree with the trial court that [La.R.S. 17:444(B)] does not provide Milstead with a cause of action in this case.

Dr. Cooper has not shown any error with the reasoning of the trial court or the court in *Milstead*, *Id.* Accordingly, we affirm the trial court's denial of his claim that the teacher tenure law applied to him as superintendent.

### *Unpaid Annual Leave*

The Board asserts the trial court erred in awarding Dr. Cooper penalties as provided by La.R.S. 23:631 which pertains to unpaid annual leave upon termination of a person's employment. Without citing authority for its argument, the Board asserts this provision does not apply to Dr. Cooper, stating "Louisiana law distinguishes between claims for unpaid wages for pay periods actually worked prior to termination," and "the unpaid amount of benefits due under a fixed term contract when that contract is terminated before expiration of the term[.]"

The assessment of penalties for an employer's failure to pay benefits that accrued to an employee before his employment was terminated is governed by La. R.S. 23:631 which provides, in pertinent part:

A.(1)(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of resignation, whichever occurs first.

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.

14

. . . .

D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:

(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.

(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.

(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.

Additionally, La.R.S. 23:634(A) (emphasis added) provides:

No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign *contracts* by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the *contract* is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

In *Wyatt v. Avoyelles Parish School Board*, 01-3180, p. 7 (La. 12/4/02), 831 So.2d 906, 912 (citations omitted), the supreme court reiterated: "These statutes are designed to compel prompt payment of wages when an employee is discharged or resigns. They are penal in nature and must therefore be strictly construed and yield to equitable defenses."

Louisiana Civil Code Article 2749 provides:

If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.

In *Bartlett v. Drs. Hosp. of Tioga*, 422 So.2d 660 (La.App. 3 Cir. 1982), *writ denied*, 427 So.2d 869 (La. 1983), the defendants raised a similar defense to the

15

plaintiff's claims. They urged that because the plaintiff sued them in city court on his wage claim and district court on his contract claim, he had forfeited his claims under La.R.S. 23:631-636. This court rejected the argument:

> LSA–R.S. 23:631 et seq. creates a cause of action whereby a discharged or resigning employee can enforce his right to wages due him at the termination of his employment. This cause of action arises when the employer fails to pay the employee wages due him within 72 hours of his termination.
>
> LSA–C.C. art. 2749 creates a cause of action whereby an employee, hired for a certain term and fired without just cause, can enforce his rights under the employment contract for the remaining portion of his salary. This cause of action is contractual in nature and arises upon termination of employment.
>
> In summary, *LSA–R.S. 23:631 and LSA–C.C. art. 2749 create separate causes of action.* In filing separate suits under these statutes Bartlett did not split his cause of action. These causes of action can be pursued by separate suits.
>
> Doctors Hospital and Diagnostic also urge that Bartlett's posture in state district court under C.C. art. 2749 is inconsistent with his posture in Pineville City Court under R.S. 23:631 et seq. Doctors Hospital and Diagnostic contend that Bartlett's posture under C.C. art. 2749 is an employee hired for a certain term, while his posture under R.S. 23:631 et seq. is an employee hired for an uncertain, indefinite term. Doctors Hospital and Diagnostic state that since Bartlett's posture in city court is inconsistent with the posture he is assuming in state district court, Bartlett should be precluded from pursuing his remedy under C.C. art. 2749 as an employee hired for a certain term. Doctors Hospital and Diagnostic suggest various forms of estoppel and res judicata as the vehicle for such a preclusion. Such a contention by Doctors Hospital and Diagnostic is without merit.
>
> The Supreme Court in *Mason v. Norton*, 360 So.2d 178 (La.1978), found that the phrase "'by the day, week or month'" in LSA-R.S. 23:631 is properly construed as describing the pay period, rather than the method of calculating wages. Under such an interpretation by the Supreme Court, *the phrase of LSA-R.S. 23:631, "by the day, week, or month" does not preclude the possibility that a person so employed might also be employed for a certain term.* We hold that, by suing for the relief provided by LSA-R.S. 23:631 et seq., a person is not estopped from suing under LSA–C.C. art. 2749 for future salary under an employment contract with a certain term.

*Id.* at 664 (emphasis added).

16

Applying this reasoning to Dr. Cooper's claims against the Board, the trial court did not err in awarding Dr. Cooper penalties as provided in La.R.S. 23:636. This assignment of error lacks merit.

*Judicial Interest*

The trial court awarded judicial interest: (1) on "payments for salary, retirement benefits, health insurance, unpaid cellphone usage, car allowance, and annual leave due; said interest to commence from the date each became due"; (2) on the "amounts owed to Dr. Cooper for unpaid accrued annual leave under La.R.S. 23:631 from November 21, 2014"; (3) on "ninety days wages under La.R.S. 23:631, for failure to pay unpaid leave owed to him at the time of termination of his employment, with interest due thereon from the date of judicial demand"; (4) on "attorney fees incurred . . . in pursuing an unpaid wage claim pursuant to La. R.S. 23:631 from the date of this judgment"; and (5) on the "attorney's [sic] fees incurred . . . for defense of the termination of his contract from the date of this judgment[.]"

Dr. Cooper argues, and the Board agrees, the trial court's award of interest on the awards contained in item (1) above are not "precise, definite, and certain" as required by our jurisprudence and recommend this matter be remanded for the trial court to specify the dates from which interest should run on those items. This court addressed the requirements of a final judgment in *Brooks v. Sibille,* 12-1093, pp. 2-3 (La.App. 3 Cir. 1/30/13), 107 So.3d 826, 828 (quoting *Gaten v. Tangipahoa Parish School System,* 11-1133 (La.App. 1 Cir. 3/23/12), 91 So.3d 1073) (case citations omitted)), and explained:

> A final judgment must be identified as such by appropriate language. La.Code Civ. Proc. Ann. art. 1918. A valid judgment must be precise, definite, and certain. A final appealable judgment must contain

17

decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied. These determinations should be evident from the language of a judgment without reference to other documents in the record.

As the parties argued, the dates from which judicial interest is due on the specific awards identified in item (1) above are not "evident from the language of [the trial court's] judgment without reference to other documents in the record." *Id.* Accordingly, the matter is remanded to the trial court to amend its judgment to specify the date on which interest began to accrue on each award in item (1).

Dr. Cooper also urges the trial court erred in not awarding judicial interest from the date of judicial demand on his other breach of contract damage claims, arguing that interest should be awarded from the date the Board breached his contract, but no later than the date of his judicial demand.

*Ashy v. Trotter*, 04-612, p. 21 (La.App. 3 Cir. 11/10/04), 888 So.2d 344, 357, *writs denied*, 05-180, 05-347 (La. 3/24/05), 896 So.2d 1045, 1047, respectively, discussed awards of judicial interest on damages for breach of contract, stating:

> Ashy argues that he should have been awarded interest from the date of the breach of contract, rather than the date of judicial demand, citing La.Civ.Code art. 1989, which states: "Damages for delay in the performance of an obligation are owed from the time the obligor is put in default. Other damages are owed from the time the obligor has failed to perform."
>
> However, La.R.S. 13:4203 states that legal interest shall attach from date of judicial demand in tort cases. While it is generally true that judicial interest should accumulate from the date of breach in contract cases, as opposed to the date of judicial demand, the supreme court in *Trans–Global Alloy Limited v. First National Bank of Jefferson Parish,* 583 So.2d 443 (La.1991), has held that in "highly complicated" cases where the issues are whether a breach has occurred and the appropriate damage amount, it is appropriate to award interest from the date of judicial demand.

In *Trans-Global*, *Id.* at 459, the supreme court determined that because "three courts . . . had difficulty in determining whether there was a breach meriting compensation, and what the consequential damages of that breach should be," the case was "highly complicated" and interest ran from the date of judicial demand.

The history of this case and the resolution of Dr. Cooper's claims are very similar to those addressed in *Trans-Global*, 583 So.2d 443. Therefore, we find it is a "highly complicated" case in which judicial interest runs from the date of judicial demand, not the date of breach.

Attorney fees are an exception to the general rule because they are not determined until the trial court awards them. *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 99-354 (La.App. 1 Cir. 6/23/00), 762 So.2d 1223, *writ denied,* 00-2232 (La. 11/13/00), 775 So.2d 438. Therefore, interest thereon runs only from the date attorney fees are awarded. *Id.*

*Costs*

In its last assignment of error, the Board urges the trial court erred in not assigning any costs to Dr. Cooper because he was not successful on all the claims he pursued against it. Under La.Code Civ.P. art. 1920, the trial court "may render judgment for costs, or any part thereof, against any party, as it may consider equitable." This court further explained in *Carriere v. Union Pacific Railroad Co.*, 18-914, p. 8 (La.App. 3 Cir. 3/13/19), 269 So.3d 1036, 1043:

> "The default rule is that the party cast in judgment is liable for all costs." *Davis v. State ex rel. DOTD*, 11-1386, p. 2 (La.App. 3 Cir. 4/11/12), 87 So.3d 396, 397. The jurisprudence recognizes that "'in the absence of some reason in equity or otherwise to control, costs generally follow the final judgment in favor of the prevailing party.'" *Johnson v. Marshall*, 202 So.2d 465, 469 (La.App. 1 Cir.), *writ refused*, 251 La. 217, 203 So.2d 555 (La.1967), *quoting Connolly v. Commercial National Bank in Shreveport*, 89 F.Supp. 976, 978 (W.D.La. 1950).

19

Considering the Board through its own actions prompted this litigation, we find no error with the trial court's assessment of costs. The Board is cast with all costs in the amount of $53,911.48.

## DISPOSITION

For the reasons discussed, the trial court's judgment is affirmed in all respects except with regard to the dates from which judicial interest accrues on its awards for "payments for salary, retirement benefits, health insurance, unpaid cellphone usage, car allowance, and annual leave due." The matter is remanded to the trial court to specify the dates from which these awards began accruing interest. All costs are assessed to the Lafayette Parish School Board in the amount of $53,911.48, pursuant to La.R.S. 13:5112(A).

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Rule 2–16.3, Uniform Rules, Courts of Appeal.